# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CONCORD MUSIC GROUP, INC., et. al.,

                           Plaintiffs,                        Case No. 3:23-cv-00606

            v.                                                Hon. Aleta A. Trauger

X CORP., D/B/A TWITTER,

                           Defendant.

**DEFENDANT X CORP.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT FACTUAL BACKGROUND..............................................................................2

LEGAL STANDARD...............................................................................................................3

ARGUMENT ............................................................................................................................4

I.      THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE DIRECT
        INFRINGEMENT..............................................................................................................4

II.     THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE CONTRIBUTORY
        INFRINGEMENT..............................................................................................................9

III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE VICARIOUS
        LIABILITY......................................................................................................................12

        A.      Plaintiffs Do Not Adequately Allege Direct Financial Interest ............................13

        B.      Plaintiffs Do Not Adequately Allege Supervision.................................................16

CONCLUSION........................................................................................................................19

## PRELIMINARY STATEMENT

Plaintiffs are major music publishers who allege that certain of Defendant X Corp.'s ("X") users have posted infringing content to its online platform. Notwithstanding that X's Terms of Service expressly forbid use of the platform to infringe copyrights, Plaintiffs seek to hold X liable for the acts of these users. The Complaint alleges that X is directly, contributorily, and vicariously liable for alleged copyright infringement arising from user posts. All three counts should be dismissed for failure to state a claim.

Plaintiffs fail to adequately allege direct infringement because the Complaint does not contend that X acted with the requisite "volitional" conduct. The law requires that direct infringement arise from active, knowing, non-automated conduct by a defendant—not from the passive, automated operations of a website. The Complaint contains no allegations of active, intentional conduct by X, or any X employee, related to the allegedly infringing user posts—an omission that is fatal to the claim.

The contributory infringement claim is similarly defective. The United States Supreme Court has held that where a company offers a product or service that has substantial non-infringing uses—as X's service indisputably does—the copyright plaintiff must allege that the defendant took active steps with the intent of encouraging infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("*Grokster*"). In this case, Plaintiffs do not allege that X encouraged, induced, or took affirmative steps with the intent to foster the infringement of Plaintiffs' works. To the contrary, X's anti-infringement policies and practices, including its DMCA policy, belie any reasonable assumption that X has induced its users to infringe any copyrights. Even reading the Complaint in the light most favorable to Plaintiffs, no liability can be established on the facts as pleaded. As this Court appropriately recognized in a case with similar

1

facts, this pleading defect requires dismissal of the contributory liability claim. *See Eight Mile Style, LLC v. Spotify USA Inc.*, 535 F. Supp. 3d 738, 746 (M.D. Tenn. 2021).

Finally, Plaintiffs' claim for vicarious liability fails as a matter of law because Plaintiffs do not allege that the ability to post infringing content to the X platform (in violation of the Terms of Service) is a draw to users sufficient to confer an "obvious and direct" financial benefit to X, or that X had the practical ability to supervise the alleged infringement. As such, the vicarious liability claim is also insufficiently pleaded and should be dismissed.

## RELEVANT FACTUAL BACKGROUND

X owns and operates an online social media platform that enables users to "post various forms of content … in the form of short public entries known as '[posts].'" Compl. ¶¶ 3, 103. X users have the ability to include "video (including audio) in a [post]" and to view "a video attached to a [post]." *Id.* ¶¶ 103, 106. To post content to the platform, users must agree to X's Terms of Service ("TOS"), which expressly prohibit use of the service for unlawful purposes, including for copyright infringement.[1] *See* Rose Decl. Ex. A at 3 ("You represent and warrant that you have, or have obtained, all rights, licenses, consents, permissions, power and/or authority necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services. You agree that such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission or are otherwise legally entitled to post the material and to grant us the license described above."). X also employs an anti-infringement

---

[1] A copy of relevant portions of X's TOS, which can be found online at https://X.com/en/tos and which Plaintiffs reference in their Complaint (see Compl. ¶¶ 123, 148, 171), is attached to the Declaration of Jessica Rose ("Rose Decl.") as Exhibit A. *See Karri v. BMW (US) Holding Corp.*, 2023 WL 3131990, at *4 (M.D. Tenn. Apr. 27, 2023) ("It is … well established that the court can treat documents that are integral to a plaintiff's claims and mentioned in the underlying complaint as having been incorporated into the complaint by reference.") (Trauger, J.) (quotations omitted); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018) (similar).

program by which it educates users about copyright infringement and restricts users who are accused repeatedly of copyright infringement from accessing the platform. *Id.* at 2-4.

Plaintiffs are 17 "major and independent music publishing companies." *Id.* ¶¶ 2, 18. According to Plaintiffs, the National Music Publishers Association ("NMPA") began sending "formal infringement notices to [X] on a weekly basis" in December 2021 on behalf of Plaintiffs. *Id.* ¶ 140. Plaintiffs contend that those notices identified "over 300,000 infringing [post]s" by users on the platform. *Id.* Although Plaintiffs criticize X's anti-infringement program, the Complaint implicitly acknowledges that X has removed hundreds of thousands of the accused posts. *Id.* ¶¶ 149, 152.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint's allegations … 'must be enough to raise a right to relief above the speculative level.'" *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 772 (M.D. Tenn. 2019) (Trauger, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Although the Court must view the allegations in the light most favorable to Plaintiffs, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Gehrisch v. Chubb Grp. of Ins. Companies*, 645 F. App'x 488, 490 (6th Cir. 2016) (quotations omitted).

3

## ARGUMENT

The Complaint alleges that X is liable for (1) direct infringement (Count I); (2) contributory infringement (Count II) and (3) vicarious liability (Count III). For the reasons set forth below, all Counts should be dismissed for failure to state a claim.

## I. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE DIRECT INFRINGEMENT

To adequately plead a claim for direct copyright infringement, a plaintiff must allege that "(1) it owns or is the exclusive licensee of a valid copyright and (2) the alleged infringer violated at least one exclusive copyright right under 17 U.S.C. § 106." *Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018). Critically, to satisfy the second prong of this test, a plaintiff must allege that the infringement resulted from an intentional and knowing act by the defendant. *Id.* ("Consistent with the national trend, the Sixth Circuit has recognized that direct infringement occurs where a defendant intentionally and knowingly copies a copyrighted work."). This "volitional conduct" requirement is an essential element of direct infringement. *See Kremer v. Reddit, Inc.*, 2022 WL 3702092, at *6–7 (M.D. Tenn. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4241273 (M.D. Tenn. Sept. 14, 2022) (collecting cases); *see also Hunley v. Instagram, LLC*, 2023 WL 4554649, at *11 (9th Cir. July 17, 2023) ("every circuit to address this issue has adopted some version of … the volitional-conduct requirement") (quotations omitted). Indeed, the "volitional conduct element … is a basic requirement of causation: 'As its name suggests, direct liability must be premised on conduct that can reasonably be described as the direct cause of the infringement.'" *Average Joe's*, 2018 WL 6582829, at *2 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)).

The volitional conduct "prerequisite takes on greater importance in cases involving automated systems." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019); *see also*

*Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 454 (2014) (Scalia, J., dissenting) ("The volitional-conduct requirement … comes right to the fore when a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system."). In *Zillow*, the Ninth Circuit explained that a website's "automatic" functionalities, "such as automatic copying, storage, and transmission of copyrighted materials," do not give rise to direct infringement liability because they are not volitional. *Zillow Grp.*, 918 F.3d at 732 (quotations omitted). In other words, "passive participation in the alleged infringement of reproduction and adaptation rights … is not sufficient to cross the volitional-conduct line." *Id*. at 738.

To sufficiently allege volitional conduct, "there must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, 2022 WL 445172, at *10 (5th Cir. Feb. 14, 2022) (quotations and brackets omitted); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (same); *see also Zillow Grp.*, 918 F.3d at 732 ("direct copyright liability for website owners arises when they are *actively involved* in the infringement") (emphasis in original). Importantly, a plaintiff fails to state a claim for direct infringement if it does not assert that "the distribution of the copyrighted material did not happen automatically" or that the defendant "exercised control, selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." *Long v. Dorset*, 854 F. App'x 861, 863-64 (9th Cir. 2021) (quotations and brackets omitted) (affirming dismissal of direct copyright infringement where there was no allegation of volitional conduct); *Stross v. Twitter, Inc.,* 2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) (dismissing direct infringement claim for failure to allege that X's conduct was not

automatic). "Most of the time that issue will come down to who selects the copyrighted content: the defendant or its customers." *Aereo, Inc.*, 573 U.S. at 454-55 (Scalia, J., dissenting). There is "a long line of copyright cases against internet service providers, in which courts have routinely held that passively hosting infringing works on a server or cache does not rise to the level of volitional conduct required for direct copyright infringement liability." *Tom Hussey Photography, LLC v. BDG Media, Inc.*, 2020 WL 7481770, at *2 n.1 (D. Del. Dec. 18, 2020) (dismissing direct copyright infringement claim where defendant's "only alleged volitional act was acquiring a website that hosted allegedly infringing copies of Plaintiff's work") (collecting cases).

Here, Plaintiffs fail to allege that X directly infringed the asserted copyrights through active, intentional, non-automatic conduct directed at the allegedly infringing posts. Instead, the relevant allegations in the Complaint implicate automated conduct by X's computer code directed at the general operation of the website. For example, the allegation that X "advances its business model by selecting and promoting [posts] that include video, including those containing recordings embodying Publishers' songs" describes passive conduct resulting from the website's algorithms. *See* Compl. ¶ 116. Similar allegations also fail to describe actionable, volitional conduct by X but rather are the function of the algorithmic mechanics of the website. *See, e.g.* Compl. ¶ 108 (X "provides a user with [posts] that [X] selects from the user from various sources"); *id.* ¶ 111 (X "uses its understanding of the content of [posts] to recommend [posts] to users of its platform"). Absent express allegations that these mechanisms are actively and knowingly employed and directed by human beings, there can be no liability for direct infringement.

Similarly, allegations concerning the copying of content on X's servers do not satisfy the volitional conduct requirement. For example, the allegations that (1) "[w]hen a user uploads a video file containing music, the file and an initial copy is created on a server [X] owns or controls"

and (2) X "then copies that initial copy into additional formats and to additional [X] servers in various locations, as well as streams the uploaded video to users" (Compl. ¶ 135) describe passive, storage-related activity not connected to the specific allegedly infringing content. *See, e.g.*, *Parker v. Paypal, Inc.*, 2017 WL 3508759, at \*4 (E.D. Pa. Aug. 16, 2017) (dismissing claims against Amazon for copyright infringement because Amazon's "storage of electronic materials on their servers, like Google, Inc.'s caching of websites ... , is, by its nature, passive conduct performed automatically at the instigation of others, and does not render Moving Defendants liable for any direct copyright infringement") (collecting cases); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (dismissing claim for direct copyright infringement because "Google's automatic archiving of USENET postings and excerpting of websites in its results to users' search queries do not include the necessary volitional element to constitute direct copyright infringement"); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (no direct infringement where "Google's computers respond automatically to the user's request" such that "[w]ithout the user's request, the copy would not be created and sent to the user"); *see also CoStar Grp.*, 373 F.3d at 551 ("There are thousands of owners, contractors, servers, and users involved in the Internet whose role involves the storage and transmission of data in the establishment and maintenance of an Internet facility. Yet their conduct is not truly 'copying' as understood by the Act; rather, they are conduits from or to would-be copiers and have no interest in the copy itself.").

The few allegations in the Complaint that do reference non-automated conduct by X employees, *see, e.g.*, Compl. ¶¶ 115-116, pertain to operation of the site generally and have no nexus to the specific acts of alleged infringement. For example, the allegation that "[t]hrough regular acts and decisions by [X] employees, [X] designs, operates, maintains, and adjusts its

algorithms to implement and advance [X]'s business model" (*id.* ¶ 116) is insufficient because it does not describe conduct by X that was intentionally and knowingly directed at the alleged infringement. Rather, it describes operation of the website generally, which lacks a "nexus sufficiently close and causal to the illegal copying." *Canada Hockey, L.L.C.*, 2022 WL 445172, at *10; *see Stross*, 2022 WL 1843142, at *3 (dismissing direct copyright infringement claim against X because of "the lack of any nexus between [X]'s conduct and the alleged infringement," where no allegation "suggests that [X] actively (or even passively) copied, shared, or reposted *Plaintiff's* posts") (emphasis in original).

Finally, allegations that X delayed action or failed to take down specific infringing material, *see, e.g.*, Compl. ¶¶ 147-153, are insufficient to plead direct infringement because there is no contention that X knowingly and deliberately caused the initial infringing act—*i.e.*, the posting of the allegedly infringing content to the website. Plaintiffs do not deny that X often "remov[ed] or disabl[ed] access to" posts with allegedly infringing material, *id.* ¶ 149, but complain that X either took too long act, or in some cases failed to remove the content, *id.* ¶¶ 149-150, 152-153. But this is insufficient; courts have repeatedly held that the failure of a website to respond to take down notices pursuant to the DMCA does not satisfy the volitional conduct requirement for direct copyright infringement. *See, e.g.*, *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *4 (S.D.N.Y. Mar. 21, 2022) ("irrespective of how long it took YouTube to remove the Second RT Video, Business Causal has failed to claim plausibly that any purported delay by YouTube constituted active, volitional conduct that caused TV-Novosti's alleged infringement"); *Parker*, 2017 WL 3508759, at *4 n.6 (rejecting allegation that "failure to investigate the infringement after Plaintiff notified them of it constitutes volitional conduct"

because it is insufficient to support that the defendants "caused in some meaningful way the infringement") (quotations and brackets omitted).

## II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE CONTRIBUTORY INFRINGEMENT

The Supreme Court's ruling in *Grokster* describes the circumstances under which a claim of contributory infringement can lie against a defendant like X that sells a product or service capable of substantial non-infringing use. *Grokster* held that the mere sale of a product or service "capable of both lawful and unlawful use" does not constitute contributory infringement unless there is additional evidence that the defendant acted "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." 545 U.S. at 918-19. It is insufficient to premise a contributory liability claim on a defendant's "mere knowledge of infringing potential or of actual infringing uses." *Id.* at 937. Rather, to prevail on a claim for contributory infringement, a plaintiff must plead and prove that the defendant distributed a device or service with the intent of fostering infringement:

> [O]ne who distributes a device [or service] with the ***object*** of promoting its use to infringe copyright, as shown by ***clear expression or other affirmative steps taken to foster infringement***, is liable for the resulting acts of infringement by third parties. We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, 464 U.S., at 439, n. 19, 104 S.Ct. 774, ***mere knowledge of infringing potential or of actual infringing uses would not be enough*** here to subject a distributor to liability. ***Nor would ordinary acts incident to product distribution,*** such as offering customers technical support or product updates, support liability in themselves. The inducement rule, instead, premises liability on ***purposeful, culpable expression and conduct***, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

*Id.* at 936-37 (emphases added).

In *Grokster*, the defendants' "business models … confirm[ed] that their principal object was use of their software to download copyrighted works." *Grokster*, 545 U.S. at 926 (emphasis

9

added).  Each defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement, the market comprising former Napster users," and, indeed, brazenly designed its entire product line and customer outreach around attracting these known infringers. *Id.* at 939.  In fashioning a rule for such circumstances, the Supreme Court made clear that "in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses."  *Id.* at 939 n.12.

In short, *Grokster* held that a defendant that offers a service with substantial non-infringing uses can be held liable for contributory infringement only where there is evidence that it was the defendant's intended purpose—***its objective***—to cause infringement, ***as shown by clear expression or affirmative acts***.  *Grokster* also cautions that liability may not be based on a failure to prevent infringement.  *Id*. at 939 n.12 ("[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement … Such a holding would tread too close to the *Sony* safe harbor.").  Rather, liability must be premised upon "purposeful, culpable expression and conduct" aimed at inducing infringement.  *Id*. at 936-37.

District courts within the Sixth Circuit, including this Court, have appropriately applied *Grokster* to claims of secondary copyright liability.  *See Eight Mile Style, LLC v. Spotify USA Inc.*, 535 F. Supp. 3d 738, 746 (M.D. Tenn. 2021) (Trauger, J.) ("If a case falls squarely within *Grokster*, then *Grokster*, of course, applies."); *Average Joe's*, 2018 WL 6582829, at *2 ("Plaintiff must provide evidence that, if believed, would cause a jury to conclude Defendant intentionally induced infringement by clear expression or other affirmative steps to foster infringement.").  Courts outside the circuit have done so as well.  *See, e.g.*, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d

1142, 1148 (9th Cir. 2018) (complaint failed to allege "purposeful, culpable expression and conduct" aimed at infringement); *King v. Amazon Corp.*, 2019 WL 6404882, at \*4-5 (W.D.N.C. Nov. 27, 2019) (barring contributory infringement claims where product is capable of a substantial non-infringing use and intentional inducement is not shown); *see generally Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, 2014 WL 894805, at \*6 (E.D. Tex. Mar. 4, 2014) (noting that, in both patent and copyright cases, "if the [product] has 'substantial noninfringing use[s]'—then [defendant] is entitled to sell it as a staple article of commerce so long as it does not take affirmative steps to induce infringement").

Here, the Complaint fails to allege that X intentionally induced the alleged infringement. It contends that X (1) "encourages users to upload videos directly to the [X] platform"; (2) "is fully aware of the infringing activity at issue in this litigation"; and (3) "knows that there is rampant, unauthorized use of music, including Publishers' musical compositions, across its platform." Compl. ¶¶ 131, 140, 144. These allegations do not describe "clear expression" or "affirmative steps" by X to encourage copyright infringement.

Moreover, the Complaint acknowledges X's substantial efforts to curb user infringement by (1) prohibiting the use of unauthorized copyrighted works on the platform, and (2) adopting and employing an anti-infringement policy that terminates the accounts of customers accused by rightsholders of infringement.[2] *See* Rose Decl. Ex. A. Although the Complaint paints X's anti-infringement efforts as inadequate, *see* Compl. ¶¶ 140-169, it does not allege that these efforts were meant to encourage infringement. Rather, Plaintiffs' position is that X can do more than it

---

[2] X's TOS, referenced in Paragraph 123 of the Complaint, contains several provisions expressly prohibiting users from using the platform to infringe. For example, Paragraph 3 of the TOS prohibits the use of the service to violate copyright law, lists a designated agent to receive copyright complaints, and points to an automated form to facilitate the submission of such complaints. *See* Rose Decl. Ex. A at 2-3.

already does to prevent copyright infringement. That is insufficient to state a contributory infringement claim under *Grokster*. *See Average Joe's*, 2018 WL 6582829, at *6 (anti-infringement policies and practices evidence that defendant did not foster infringement). Similarly, the allegation that X "has not obtained licenses or other agreements necessary for Publishers' musical compositions to be lawfully used on its platform," Compl. ¶ 140, is just another way of saying that X could do more to address the unauthorized use of music on the site by purchasing licenses from Plaintiffs on behalf of X's users. Whether X sought music licenses for users or elected not to do so has no bearing on this inquiry; it is not evidence of an intent to encourage infringement.

Finally, there can be no reasonable dispute that X's platform has substantial non-infringing uses. The Complaint acknowledges that X's "online social media platform" is used by "people … to share and view messages and media." Compl. ¶ 3. Plaintiffs themselves use the X platform for these non-infringing purposes. *See, e.g.,* Sony Music Publishing (https://X.com/SonyMusicPub); Warner Chappell Music (https://X.com/WarnerChappell); and Peer Music (https://X.com/peermusic).

## III. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE VICARIOUS LIABILITY

To state a claim for vicarious liability, Plaintiffs must allege that X: (1) has an obvious and direct financial interest in the infringement; and (2) has the right and ability to supervise the infringing conduct. *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003). "These elements are independent requirements, and each must be present to render a defendant vicariously liable." *Id.*

Further, the Supreme Court has held that vicarious copyright liability should be narrowly construed in the context presented here, urging district courts to be "circumspect in construing the scope of rights created by a legislative enactment which never contemplated" the "competing

interests that are inevitably implicated by [a] new technology." *See Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 431 (1984); *see also id* (citing several decisions reflecting the "recurring theme" of "the judiciary's reluctance to expand the protections afforded by the copyright without explicit legislative guidance").

### A.    Plaintiffs Do Not Adequately Allege Direct Financial Interest

As noted above, to adequately plead a claim for vicarious liability, Plaintiffs must allege facts sufficient to show that X "has an obvious and direct financial interest in the infringement." *Gordon*, 345 F.3d at 925; *see also Grokster*, 545 U.S. at 930 n.9 (defendant must "profit[] directly from the infringement"). To satisfy this prong of vicarious liability, courts have held that a defendant must profit directly, rather than incidentally, from the alleged infringement. *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) ("A website owner can receive a direct financial benefit from the presence of infringing material on his or her website, but only where the availability of infringing material acts as a draw for customers") (quotations omitted). "If the infringing material is just an added benefit, rather than a draw, it does not confer a direct financial benefit on the website owner." *Id.* (quotations omitted); *UMG Recordings, Inc. v. Bright House Networks, LLC,* 2020 WL 3957675, at *3-7 (M.D. Fla. July 8, 2020) (rejecting argument that direct financial benefit is established when ability to infringe is only one of many possible reasons to use the service); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2018 WL 1096871, at *9–10 (W.D. Tex. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1905124 (W.D. Tex. Mar. 28, 2018) (rejecting theory that any draw is sufficient to give rise to liability because "that would impose liability on every ISP.")

Here, the Complaint fails to allege that X received a direct financial benefit from the alleged infringement of Plaintiffs' works. Nor could it. X is a service that offers a wide range of legitimate uses to subscribers; for example, the Plaintiffs in this case maintain their own X accounts that they

use for promotional purposes.  Plaintiffs also do not plausibly allege that subscribers are drawn to X to post or view the allegedly infringing content at issue in this case, as opposed to using the platform for its many legitimate purposes.  Although the Complaint alleges **generally** that Plaintiffs' copyrighted compositions "attract and retain users" and "drive engagement," Compl. ¶ 9, these boilerplate allegations lack detail and therefore are insufficient to support a claim.  There is no allegation that any user joined X or continued to use its service because of the particular copyrighted works asserted in this case.  *See Klauber Bros., Inc. v. URBN US Retail LLC*, 2023 WL 1818472, at *8 (S.D.N.Y. Feb. 8, 2023) (dismissing vicarious and contributory infringement claims based on "conclusory allegations").  Plaintiffs' allegations thus fail to describe an "obvious and direct" financial benefit to X from the allegedly infringing posts.

Similarly, the allegation that X earns money "via advertising, subscriptions, and data licensing," Compl. ¶ 126, is not enough to establish vicarious liability, as it simply describes X's business model generally, but does not claim that X benefited directly from infringement of the copyrighted works asserted by Plaintiffs in this case.  For example, a vague reference to X's purported "monetization of infringing content," Compl. ¶ 127, does not demonstrate that the allegedly infringing content *itself* is being monetized by X.  Rather, this allegation only goes to show that advertising may run adjacent to an allegedly infringing post (as it does for many non-infringing posts).  Plaintiffs do not assert that the advertisement was placed there by X **because of** the allegedly infringing content.

In this regard, Plaintiffs' contentions are similar to those dismissed in *Parker v. Google*, where allegations that "Google's advertising revenue is directly related to the number of Google users" and that the number of users "is dependent directly on Google's facilitation of and participation in the alleged infringement" were held to be "vague and conclusory" and did "not

allege any actual relationship between infringing activity and the number of users and thus [did] not allege obvious and direct financial interest sufficient to maintain this claim of vicarious infringement." 422 F. Supp. 2d at 500. Here, Plaintiffs' allegations similarly do not plausibly allege a direct causal nexus between the complained-of infringing conduct and X's financial gain. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,* 907 F. Supp. 1361, 1377 (N.D. Cal. 1995) ("Plaintiffs cannot provide any evidence of a direct financial benefit received by Netcom from Erlich's infringing postings"); *Adobe Sys. Inc. v. Canus Prods., Inc*., 173 F. Supp. 2d 1044, 1051 (C.D. Cal. 2001) (the draw must be "the infringing products" themselves); *see also Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) ("there is no evidence that indicates that AOL customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer available").

Plaintiffs' claim that audiovisual posts in general "draw much higher rates of engagement than posts that merely include text," Compl. ¶ 6, is facially insufficient because audiovisual posts are not inherently infringing. *See Paypal, Inc.*, 2017 WL 3508759, at *5 ("Plaintiff does not allege any facts that, if true, would support that customers are drawn to Moving Defendants' cloud storage business due to the availability of infringing work or the ability to store infringing work on the servers."). And allegations that X benefits from not licensing music from Plaintiffs for X users to incorporate in their posts, Compl. ¶¶ 131-132, also miss the mark. The inference is that customers are somehow drawn to X because it does ***not*** offer a library of musical compositions that users can access is nonsensical. If anything, users would be drawn away from X and toward other social media platforms that have this feature.

The conclusory allegation that "[t]he more infringing content posted to an account, the more followers that account obtains, and the more engagement there is on the [X] platform, all of

15

which drives [X]'s advertising revenue" also falls short of establishing vicarious liability. Compl. ¶ 173-175. This allegation merely assumes a causal link between posting infringing content on the one hand, and gaining followers, increasing engagement, and driving revenue for X on the other. Bald speculation, however, cannot form the basis of a claim. Further, it is immaterial that "across the NMPA notices, [X] accounts in fewer than three [NMPA] notices had roughly 17,000 followers on average, whereas accounts identified in three or more [NMPA] notices had more than 34,000 followers on average," Compl. ¶ 174, because these statistics are driven by ***Plaintiffs' notice-sending behavior***, not the behavior of X or its users.

### B.    Plaintiffs Do Not Adequately Allege Supervision

With respect to the second prong of vicarious liability, courts have held that the right and ability to supervise infringing conduct "requires both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Zillow Grp.*, 918 F.3d at 746 (quotations and citations omitted). The "pertinent inquiry is not whether [the defendant] has the right and ability to control its *system*, but rather, whether it has the right and ability to control the *infringing activity*." *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1151 (N.D. Cal. 2008) (emphasis in original). This element further "presupposes some ***antecedent ability*** to limit or filter copyrighted material." *Tur v. YouTube*, 2007 WL 1893635, at *3 (C.D. Cal. June 20, 2007) (emphasis added). "[V]icarious liability arises only when a defendant ***pervasively participates*** in the infringer's relevant activities." *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 754 (S.D. Ohio 2021) (quotations and brackets omitted) (emphasis added).

Dismissal is required when a plaintiff has failed to adequately allege actual supervision over the allegedly infringing activity. *See, e.g., Luvdarts, LLC v. AT & T Mobility, LLC,* 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming dismissal of vicarious infringement claim because "Luvdarts's failure to allege that the Carriers have at least something like a capacity to supervise

16

is fatal to a claim of vicarious liability"); *Johnston v. Kroeger*, 2021 WL 3571279, at *5 (W.D. Tex. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 8442050 (W.D. Tex. Aug. 26, 2021) ("Without allegations that would support an inference that Live Nation had right or ability to supervise the Nickelback Defendants' allegedly infringing activity, Johnston has not stated a claim for vicarious infringement."); *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *24 (S.D.N.Y. Sept. 30, 2019) (dismissing vicarious infringement claim because "Plaintiff has presented no evidence that Bonanza had any 'right and ability to supervise' any alleged infringing activity"); *Montes v. Live Nation*, 2018 WL 4964323, at *4 (C.D. Cal. May 9, 2018) (dismissing vicarious infringement claim because plaintiff failed to allege right and ability to supervise allegedly infringing activity).

There is no allegation in the Complaint that X had the right or ability to supervise ***the alleged infringing conduct***. Like many online platforms that host user-generated content, X also has no ability to monitor or even view user generated content until ***after*** it is posted to the site. Further, given the tremendous volume of user posts to the site each day, X lacks the practical ability to determine whether any particular posts violate third party copyrights. *See Masck v. Sports Illustrated*, 2013 WL 2626853, at *7 (E.D. Mich. June 11, 2013) (finding Amazon "cannot be expected to examine every product posted by a third-party and determine whether or not it is infringing").

Nor does the Complaint plausibly allege that X has the ability to reliably detect the unauthorized use of Plaintiffs' copyrighted music in real time before that music is posted to the site. *See id.* ("Plaintiff must put forth factual allegations that demonstrate Amazon could plausibly verify the copyright status of each and every piece of merchandise it lists from third-party sellers. Failure to do so requires dismissal of this claim."). The allegation that X could "filter the content

being posted to its servers with available technology to stop the ongoing infringement," Compl. ¶¶ 170, 172, is not plausible—even when viewed in the light most favorable to Plaintiffs—because no existing technology can reliably ascertain whether the use of music in a particular post is unlawful, if it is licensed, or if it is a fair use. *Viacom Int'l Inc. v. YouTube, Inc*., 718 F. Supp. 2d 514, 522 (S.D.N.Y. 2010) (YouTube cannot be expected "to determine whether the [copyrighted work] was still protected by copyright or was in the public domain; if the [copyrighted work] was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine.") (quoting House Committee on Commerce Report, H.R.Rep. No. 105-551, pt. 2 at 57-58 (1998)), *rev'd on other grounds* 676 F.3d 19 (2d Cir. 2012). Regardless, it is not sufficient to allege merely that a defendant "could 'establish [] … a system' that would give them the right and ability to supervise the infringing activity." *Luvdarts, LLC*, 710 F.3d at 1071-72.

Additionally, the fact that X has the contractual right to terminate a user's account, *see* Compl. ¶ 170, does not mean that it has the practical ability to control or supervise the content users post before they post it. As many Courts have held, the ability to terminate a user's account is not the same as the ability to supervise the infringement. *See Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715-16 (9th Cir. 2014) ("[W]hile Amazon may have had the right and ability to terminate the accounts of the infringing Associates, Routt has not adequately alleged that Amazon exercises any direct control over those Associates' activities. In the absence of such allegations, Amazon cannot be held vicariously liable for its Associates' conduct."); *Music Force, LLC v. Sony Music Holdings Inc.*, 2020 WL 5733258, at *3 (C.D. Cal. Aug. 12, 2020) ("If plaintiff's argument is that Sony can stop Lil Nas X's infringement by threatening to terminate their agreement, such an argument is unpersuasive because the right to terminate services or a contract with an infringer

does not amount to a right and ability to supervise the infringing conduct.") (quotations omitted).

Relatedly, the ability to restrict public access to an allegedly infringing post after it is posted, Compl. ¶¶ 170-172, does not equate to the ability to supervise the user's act of infringement. The "pertinent inquiry is not whether [the defendant] has the right and ability to control it[s] *system*, but rather, whether it has the right and ability to control the *infringing activity*." *Io Grp.*, 586 F. Supp. 2d at 1151 (emphasis in original). Nor is having "control over the content on its servers," Compl. ¶ 170, enough. *See Lopez*, 2019 WL 5199431, at *23 (allegation that "[defendant] 'has the direct control over the products sold from its website and has the ability to monitor and control the infringing activity'" is insufficient because it "says nothing … of 'the scope of [defendant's] control, if any, over the allegedly infringing activity") (quotations omitted).

As Plaintiffs have not alleged facts sufficient to support an inference of direct financial benefit, or that X has the right and ability to supervise allegedly infringing posts, the vicarious liability claim cannot be sustained.

## CONCLUSION

For the foregoing reasons, X respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: August 14, 2023

Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com

Alex Spiro (*pro hac vice*)
Jessica A. Rose (*pro hac vice*)
Dylan I. Scher (*pro hac vice*)

Respectfully Submitted,

By: */s/ Aubrey B. Harwell III*
Aubrey B. Harwell III (No. 017394)
William J. Harbison II (No. 33330)
Olivia Arboneaux (No. 40225)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com
jharbison@nealharwell.com
oarboneaux@nealharwell.com

19

D. Seth Fortenbery (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 895-2500
alexspiro@quinnemanuel.com
jessicarose@quinnemanuel.com
dylanscher@quinnemanuel.com
sethfortenbery@quinnemanuel.com

David Eiseman (*pro hac vice*)
Linda J. Brewer (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on August 14, 2023 with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system.

Steven A. Riley
John R. Jacobson
Tim Harvey
Grace C. Peck
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rjfirm.com
jjacobson@rjfirm.com
tharvey@rjfirm.com
gpeck@rjfirm.com

Scott A. Zebrak
Matthew J. Oppenheim
Keith Howell
Meredith Stewart
OPPENHEIM +ZEBRAK, LLP
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
scott@oandzlaw.com
matt@oandzlaw.com
khowell@oandzlaw.com
mstewart@oandzlaw.com

Alexander Kaplan
Carly Rothman
Andrew Guerra
Matthew Cooper
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
carly@oandzlaw.com
andrew@oandzlaw.com
mcooper@oandzlaw.com

*Attorneys for Plaintiffs*

By: */s/ Aubrey B. Harwell III*
Aubrey B. Harwell III