IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CONCORD MUSIC GROUP, INC. ET AL.,

Plaintiffs,

v.

X CORP., D/B/A TWITTER,

Defendant.

Case No. 3:23-cv-00606
District Judge Aleta A. Trauger

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION
TO DEFENDANT X CORP.'S MOTION TO DISMISS**

I. **The Complaint Plausibly Alleges Direct Infringement**

In arguing that *Aereo* is inapposite because it does not address volitional conduct, Reply 2, X misses the point. The *Aereo* majority instructs that an *Aereo* analysis is the lens for assessing a performance claim against an online service like X, whose activities are analogous to Aereo's, without reviewing for volitional conduct as the *Aereo* dissent called for. Opp. 3-4.

X argues that four cases have "expressly rejected" the proposition that a performance claim like Plaintiffs' is to be reviewed under *Aereo*, rather than through the lens of volitional conduct. Reply 1. But that is not right. The cases X relies on did not focus on the performance right.[1]

X argues that courts "treat volitional conduct as an element of direct infringement of the performance right." Reply 1-2. But X's reliance on *Average Joe's v. SoundCloud, Ltd.,* 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018), the sole case cited from this circuit, fails to address that the decision seems based on a mistaken understanding of the Sixth Circuit's *Bridgeport* decision and should not be followed. Opp. 6. Of the remaining cases X cites, only *Fox Broadcasting v. DISH Network*, 160 F. Supp. 3d 1139 (C.D. Cal. 2015), is on point. But that case examined volitional conduct only after concluding that the defendant's conduct, unlike X's here, was more analogous to an entity that merely supplies equipment used to infringe than to one that engages in activities like Aereo did. *Id.* at 1160-61. And, X's remaining cases do not readily support X's proposition.[2]

---

[1] *See Hunley v. Instagram, LLC*, 73 F.4th 1060, 1067 (9th Cir. 2023) (claim over display of photos); *BWP Media USA, Inc. v. Polyvore, Inc.*, 922 F.3d 42, 52-53 (2d Cir. 2019) (claim for reproduction and display of photos); *BWP Media USA, Inc. v. T&S Software Assocs.*, 852 F.3d 436, 440 n.1 (5th Cir. 2017) (same); *Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, 2022 WL 7560395 (D. Colo. Oct. 13, 2022) (examining an infringement claim generally, not specific factual allegations concerning the performance right).

[2] *See ABKCO v. Sagan*, 50 F.4th 309, 321-22 (2d Cir. 2023) (court's statement about volition concerned "copying and distribution", not a public performance claim); *BMG Rts. Mgmt. (US) LLC v. Joyy*, 644 F. Supp. 3d 602, 608-09 (C.D. Cal. 2022) (discussed volition in the context of general infringement claim but not explicitly regarding public performance); *Bus. Casual*

Case 3:23-cv-00606    Document 86    Filed 10/16/23    Page 2 of 10 PageID #: 494

*Aereo* is the proper framework to apply in this case. However, even through a lens of volitional conduct, Plaintiffs' allegations in the Complaint are sufficient. Opp. 7-10. X concedes "volition was present" in the cases Plaintiffs rely upon. Reply 2. With the conduct in those cases analogous to X's conduct here, X's motion is, at most, a fact dispute that cannot be resolved now.

In *Aereo*, Aereo had an automated system that remained "inert" until the *user selected* a program for viewing and was nonetheless found liable. Opp. 4. In *Spinrilla*, while the defendant itself uploaded (not "selected" as X asserts, Reply 3) 38 of 45 mixtapes accounting for 165 works in suit, it was held liable for directly infringing plaintiffs' performance right *for all 4,082 works in suit* because it "created an interactive internet player that streamed copyrighted content directly from its website and mobile app," a fact X omits because that is precisely what X does here. 506 F. Supp. 3d 1294, 1300, 1316 (N.D. Ga. 2020). And in *Spanski*, the court found the defendant directly infringed where it streamed television programming upon a user's request into a territory in which the plaintiff held exclusive performance rights; the court made such a finding regardless of defendant's role in uploading and selecting content. 883 F.3d 904, 911 (D.C. Cir. 2018).

None of these cases required a business model "designed to obtain and supply infringing content." Reply 2. X not only has acted with volition by creating a feature on its website that streams infringing content to users, but also by virtue of engaging in four other categories of volitional conduct that Plaintiffs alleged, Opp. 8, and which X glosses over in its Reply. These acts, which X voluntary engages in, render it an active participant in the infringing activity.[3]

---

*Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *7-9 (S.D.N.Y. Mar. 21, 2022) (discussion of volition in case where infringement of public performance not explicitly alleged and where YouTube did not fail to remove infringing material, Opp. 10).

[3] Notably, X has backtracked from its contention that volition requires "active, knowing, non-automated conduct" "directed by human beings." Compare Mot. 1, 6, with Reply 4. X relies on *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723 (9th Cir. 2019), for the proposition that volitional conduct

2

Finally, X cannot escape the significance of its failure to reasonably address the infringers and infringements listed in Plaintiffs' notices (this is one of the five categories of X's volitional acts). Opp. 9. In *Bell*, the defendant actively and personally managed the website (as X does here), and the volitional conduct arose from the defendant's negligence in failing to remove a photo identified in an infringement notice. 12 F.4th 1065, 1081-82 (9th Cir. 2021). Similarly, in *Jadoo*, the defendant acted volitionally in multiple ways, one of which was that it enhanced users' access to infringing content by not removing such content identified in notices. 2023 WL 4004115, at *12, 18-19, 27-28. In the cases X relies on, the plaintiff's claim failed on the facts, not because a decision to continue transmitting a work rather than remove it is not volitional conduct. Opp. 10.

## II. The Complaint Plausibly Alleges Contributory Liability

X argues it cannot be contributorily liable for materially assisting *specific known infringers* with their continued infringement and/or failing to remove or disable access to *specific infringing material* identified in infringement notices. Reply 5-7. That argument is wholly without merit.

The *Sony* doctrine of a product "capable of substantial noninfringing uses" concerned a product (VCR) sold into commerce, without a continuing connection between the seller and users of the product. 464 U.S. 417, 438 (1984). That differs from X's ongoing relationship with its users as a service provider, as the analogous Fourth Circuit *Cox* decision makes clear:

> Consider a company that leases VCRs, learns that specific customers use their VCRs to infringe, but nonetheless renews the lease to those infringing customers. Given those facts, the company knows that its action—renewing the lease of the VCR to these specific customers—is substantially certain to result in infringement, and so an intent to cause infringement may be presumed.

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018).

---

does not extend to "general operation" of a website. Reply 3-4. Yet that language, and X's over-reliance on it, imposes the automation exception that X concedes does not exist in the law. In any event, *Zillow* did not concern the five categories of volitional conduct Plaintiffs allege here. *Supra*.

3

Case 3:23-cv-00606     Document 86     Filed 10/16/23     Page 4 of 10 PageID #: 496

Rejecting X's argument, Reply 5-6, the Fourth Circuit held that "a product with 'substantial non-infringing uses' *can* constitute a material contribution to copyright infringement" "when a person sells a product that has lawful uses, but with the *knowledge* that the buyer will *in fact* use the product to infringe copyrights." *Id*. at 306-07. "In that circumstance, the seller knows that infringement is substantially certain to result from the sale; consequently, the seller intends to cause infringement just as much as the seller who provides a product that has exclusively unlawful uses." *Id.* at 307. While "generalized knowledge" is not enough, a material contribution claim can exist where, as here, the defendant has knowledge of "*specific* instances of infringement," such that the defendant "could *do* something about it." *Id.* at 311-12; *cf.* Compl. ¶¶ 140-171.

X makes much too much of Justice Ginsburg's concurrence in *Grokster*. Reply 6. Context is required. Justice Ginsburg opined as the Supreme Court cut back on *Sony* to make clear that inducement was an available theory of contributory infringement. 545 U.S. 913, 933-34 (2005); Opp. 11. The statement did not purport to be a comprehensive recitation of all the different ways to prove material contribution. Indeed, in the years since *Grokster*, many courts (not just the Fourth Circuit) have rejected X's argument that inducement is the only path for contributory liability where the defendant sells a product capable of substantial non-infringing uses. Opp. 12.

X twists this Court's decision in *Eight Mile Style, LLC v. Spotify USA Inc.*, 535 F. Supp. 3d 738 (M.D. Tenn. 2021) (Trauger, J.). This Court held that *Grokster* does *not* foreclose a traditional contributory infringement claim based on knowledge and material contribution. *Id*. at 746. X argues that the Court allowed the material contribution claim to proceed "because, there, unlike here, the alleged infringement did not arise from the sale of a product or service capable of substantial non-infringing uses." Reply 7. But Spotify was obviously capable of non-infringing

4

uses, which was not in dispute. *See Eight Mile*, 535 F. Supp. at 746 (defendant worked within an "ostensibly licit marketplace"). X's argument is baseless.

### III. The Complaint Plausibly Alleges Vicarious Liability

X's contention that the Complaint fails to allege a causal relationship between the alleged infringing activity and X's direct financial benefit, Reply 8, is both wrong and premature.

*First*, the "relationship or connection" that X contends is lacking, *id.*, is demonstrated by X obtaining revenue from advertising that uses infringing accounts and infringing posts and X being paid to promote such accounts and posts. Opp. 14-15. X postulates a different world, where the relevant posts or accounts were non-infringing. Reply 8. But that is not the case here. X's factual attack on the extent of the "relationship or connection" is inappropriate at this stage.

*Second*, Plaintiffs have alleged that the infringing activity is a draw, explained how and why, and even included data demonstrating the draw of the infringing activity. Opp. 15-17. That is enough. X's arguments as to weight of the facts is for later.

*Third*, X misreads the Ninth Circuit's *Erickson* case. Reply 9-10. That decision viewed as "plainly circular" the proposition of "the direct infringer's avoidance of fees" as the basis of financial benefit to the vicarious infringer. 921 F.3d 822, 830-31 (9th Cir.2019). The premise for Plaintiffs' third theory for financial benefit, however, is not that the underlying direct infringers (here, the users) avoided license fees. Instead, because there are established markets in which social media companies and streaming services, but not X, pay to license the use of compositions on their platform, X gets for free what it should be paying for through a license (like a nightclub that benefits when it plays music at its business but fails to pay the required license). Opp. 17.

Respectfully submitted,

| | |
|---|---|
| Scott A. Zebrak (*pro hac vice*) | s/ *Steven A. Riley* |
| Matthew J. Oppenheim (*pro hac vice*) | Steven A. Riley (No. 6258) |
| Keith Howell (*pro hac vice*) | John R. Jacobson (No. 14365) |
| Meredith Stewart (*pro hac vice*) | Tim Harvey, (No. 21509) |
| OPPENHEIM +ZEBRAK, LLP | Grace C. Peck (No. 38558) |
| 4530 Wisconsin Ave., NW, 5th Floor | Riley & Jacobson, PLC |
| Washington, DC 20016 | 1906 West End Avenue |
| Telephone: (202) 480-2999 | Nashville, TN 37203 |
| scott@oandzlaw.com | (615) 3203700 |
| matt@oandzlaw.com | sriley@rjfirm.com |
| khowell@oandzlaw.com | jjacobson@rjfirm.com |
| mstewart@oandzlaw.com | tharvey@rjfirm.com |
| | gpeck@rjfirm.com |

Alexander Kaplan (*pro hac vice*)
Carly Rothman (*pro hac vice*)
Andrew Guerra (*pro hac vice*)
Matthew Cooper (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
carly@oandzlaw.com
andrew@oandzlaw.com
mcooper@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses on the attached Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to any non-CM/ECF participants indicated on the attached Notice List.

*s/ Steven A. Riley*

Steven A. Riley

# Mailing Information for a Case 3:23-cv-00606 Concord Music Group, Inc. v. X Corp

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Olivia Rose Arboneaux**
  oarboneaux@nealharwell.com,mbyerly@nealharwell.com

- **Linda Jane Brewer**
  lindabrewer@quinnemanuel.com

- **Matthew Cooper**
  mcooper@oandzlaw.com

- **David Eiseman**
  davideiseman@quinnemanuel.com

- **Donald Seth Fortenbery**
  sethfortenbery@quinnemanuel.com

- **Andrew Guerra**
  andrew@oandzlaw.com

- **William J. Harbison , II**
  jharbison@nealharwell.com,nnguyen@nealharwell.com

- **Timothy G. Harvey**
  tharvey@rjfirm.com,ethomas@rjfirm.com

- **Aubrey B. Harwell , III**
  tharwell@nealharwell.com,kberkheimer@nealharwell.com

- **Keith Howell**
  khowell@oandzlaw.com

- **John R. Jacobson**
  jjacobson@rjfirm.com,jgutierrez@rjfirm.com

- **Alexander Kaplan**
  alex@oandzlaw.com

- **Matthew J. Oppenheim**
  matt@oandzlaw.com

- **Grace Peck**
  gpeck@rjfirm.com,paralegal@oandzlaw.com,jgutierrez@rjfirm.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Jessica Anne Rose**
  jessicarose@quinnemanuel.com

- **Carly Rothman**
  carly@oandzlaw.com

- **Andrew H. Schapiro**
  andrewschapiro@quinnemanuel.com

- **Dylan I. Scher**
  dylanscher@quinnemanuel.com

- **Alex Spiro**
  alexspiro@quinnemanuel.com

- **Meredith E. Stewart**
  mstewart@oandzlaw.com

- **Scott A. Zebrak**
  scott@oandzlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`