1              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF TENNESSEE
2                NASHVILLE DIVISION

3

4 CONCORD MUSIC GROUP, INC.    )
                                )
5 VS                       )  No. 3:23-cv-0606
                                )
6 X CORP                  )

7 _____

8

9

10       BEFORE THE HONORABLE BARBARA D. HOLMES,

11               MAGISTRATE JUDGE

12       **TRANSCRIPT OF ELECTRONIC RECORDING**

13              January 6, 2025

14 _____

15

16

17

18

19

20 _____

21 PREPARED FROM **ELECTRONIC RECORDING** BY:

22 **Roxann Harkins, RPR, CRR**
   Official Court Reporter
23 719 Church Street, Ste 2300
   Nashville, TN 37203
24 615.403.8314
   roxann_harkins@tnmd.uscourts.gov
25

1    **APPEARANCES:**

2    For the Plaintiff:        STEVEN ALLEN RILEY
                               GRACE PECK
3                              Riley & Jacobson
                               1906 West End Avenue
4                              Nashville, TN 37203

5                              SCOTT A. ZEBRAK
                               MEREDITH E. STEWART
6                              Oppenheim & Zebrak
                               4530 Wisconsin Ave NW
7                              5th Floor
                               Washington, DC 20016
8

9    For the Defendant:        WILLIAM J. HARBISON, II
                               Neal & Harwell
10                             1201 Demonbreun Street
                               Suite 1000
11                             Nashville, TN 37203

12

13                             ANDREW H. SHAPIRO
                               Quinn Emanuel Urquhart &
                                  Sullivan
14                             191 N Wacker Drive
                               Suite 2700
15                             Chicago, IL 60606

16

17                             DYLAN I. SCHER
                               Quinn Emanuel Urquhart &
                                  Sullivan
18                             295 Fifth Avenue
                               New York, NY 10016

19

20

21

22

23

24

25

1

2          The above-styled cause came to be heard on

3    January 6, 2025 , before the Hon. BARBARA D. HOLMES,

4    Magistrate Judge, when the following proceedings were had

5    to-wit:

6              **TRANSCRIPT OF ELECTRONIC RECORDING**

7                           **\*\*\***

8

9          THE COURT:  Go ahead and have a seat,

10   everyone.  We are here in the matter of Concord Music

11   Group, Inc. versus X Corp, No. 3:23-cv-00606.  Let me go

12   ahead and get appearances, please.

13         MR. RILEY:  Good afternoon, Your Honor.

14   Steve Riley representing the plaintiffs.  I'm here with

15   my partner, Grace Peck, and Scott Zebrak and Meredith

16   Stewart.  Scott and Meredith are from Washington, DC.

17         THE COURT:  Very good.  Thank you,

18   Mr. Riley.

19         MR. HARBISON:  Morning, Your Honor.  Jay

20   Harbison from Neal & Harwell for the defendant.  With me

21   this afternoon are Mr. Dylan Scher and Andrew Shapiro

22   from Quinn Emanuel.  Mr. Scher is from New York, and

23   Mr. Shapiro is from Chicago.

24         THE COURT:  Very good.  Welcome, everyone.

25              All right.  The purpose of this afternoon's

1  proceeding is for a hearing on the discovery dispute that

2  was referred from Judge Trauger.  I have read the

3  parties' papers, reviewed the discovery requests that

4  were made in dispute.  And thank you for your update,

5  updated filing regarding resolution of some of the

6  matters that were previously in dispute.  And I am ready

7  to hear any additional argument that you'd like to make.

8          I don't need to have a great amount of

9  detailed argument.  I understand the issues and it

10  doesn't seem to me that they are that complicated to

11  resolve, but I'm always happy to hear if there's

12  something else that you would like to add to the filings

13  that have already been made in the case.

14          So I suppose since this is really the

15  plaintiff's request, somewhat in the nature of a motion

16  to compel to -- at least compel the more complete

17  responses to the discovery.  Let me go ahead and hear

18  first from whomever's going to argue on behalf of the

19  plaintiff, then.  You can come on up to the podium.

20          MR. ZEBRAK:  Thank you, Your Honor.  My name

21  is Scott Zebrak, as Mr. Riley just indicated.  And, first

22  of all, thank you for seeing us today.  I know the

23  Court's read the papers, so I'd like to just start by

24  asking if there's any specific questions or anything

25  you'd like me to address, otherwise I'll just hit some

1  key points.

2          THE COURT:  I do have a couple of questions,

3  so thank you, Mr. Zebrak.  And maybe what makes more

4  sense to do is just to wait until -- because most of my

5  questions were about some of the later discovery

6  requests.  And the question is, largely, to have both you

7  and whomever's going to speak on behalf of the defendant,

8  explain to me what you think the difference is between

9  the two proposals.  Because I'm sure there is some

10  difference or distinction, but it's not immediately

11  apparent from the -- from Exhibit A.

12          So maybe it just makes more sense for you to

13  go ahead and go through whatever remarks you were going

14  to make and then, as we get to those specific discovery

15  requests and responses, I'll raise those questions.

16          MR. ZEBRAK:  Very well, Your Honor.  Thank

17  you.

18          So as the Court's aware, the parties have

19  had quite substantial back and forth, and we've already

20  reached a number of compromises.  With respect to the

21  matters that remain for resolution today, primarily we're

22  here over a dispute about relevance.  Obviously concepts

23  of proportionality, you know, bear upon what the ultimate

24  production will be, but as -- I hope Your Honor will see

25  as I walk through these requests in a moment, we think

1    the other -- the other side's complying with what some

2    courts have referred to as a smoking gun standard.

3              Albeit a sensational term, what that, of

4    course, means is that what some parties do is they say

5    documents are irrelevant and don't need to be produced

6    unless they're a smoking gun.  And in many ways that's

7    what's happening here, where the defendant's saying,

8    unless a particular piece of discovery is going to

9    establish one of the elements of affirmative liability,

10   there's no relevance to it.  And, of course, relevance is

11   a much broader standard than that.  And the application

12   of how defendant proposes to proceed here would really

13   deprive the Court, the jury and plaintiffs of key

14   evidence in the case.

15             THE COURT:  I think you can take some level

16   of satisfaction, Mr. Zebrak, in what I'm about to say,

17   which is that I do not think in this case, or in any

18   other case, frankly, that the standard for discovery in

19   federal litigation is a smoking gun one.  It is a very

20   broad standard of discoverability.

21             And in some respects the limited cases that

22   were cited in the parties' joint discovery dispute

23   statement fall into the same trap, pothole, whatever

24   metaphor you want to use, that they are not cases that

25   necessarily with discovery -- I understand why the

1    plaintiff cited those cases because they deal with

2    standards.  But very often parties, as has the defendant

3    here, cites to cases in which the issue is admissibility

4    of evidence for trial purposes or summary judgment

5    purposes or their case on appeal where a summary judgment

6    was reversed because of improperly-relied-upon evidence.

7    And those are very different standards, as you know.  The

8    standard for admissibility and discoverability are two

9    very different standards.  And I am not going to consider

10   cases in which the evidence may have been included at

11   trial or excluded for summary judgment purposes, either

12   before or after a motion for summary judgment was

13   considered.  I am going to apply the very broad standards

14   for relevancy.

15              And I think in this case you-all are even

16   one step further than that because Judge Trauger has

17   already told you what she thinks are relevant for

18   purposes in this case, and it is not -- I guess that is

19   my frustration with the amount of time that is being

20   spent on this discovery dispute.

21              Because Judge Trauger has already said that

22   notwithstanding her dismissal of two of the kinds of

23   claims of Counts One and Three, that she clearly said

24   that X Corp's powers of monitoring and control over users

25   and their tweets are relevant to the inquiry of whether

1  what and to what extent X Corp may be liable for the

2  infringing acts of users on its platform, as are X Corp's

3  economic incentives to tolerate infringement, whether or

4  not one resorts to the concept of vicarious rather than

5  contributory infringement.

6          And the Court's decision to permit Count Two

7  to proceed with regard to certain challenged policies

8  means that those issues are still part of the case.

9  She's already made a determination that relevancy is

10  broader just than evidence that might directly establish

11  the elements of Count Two.

12          And I -- again, I am at a little bit of a

13  loss to understand why we are here today, why all of the

14  resources of the parties -- I understand why the

15  plaintiff is here today.  I guess this is really more a

16  question for Mr. Harbison and his co-counsel about why

17  there is so much -- so many resources and so much time

18  being spent on an issue that seems to me to be pretty

19  clearly within the scope of what Judge Trauger has

20  already said is relevant discovery in this case.

21          So you can be assured that you don't have to

22  spend much more time arguing to me about the --

23          MR. ZEBRAK:  Sure.

24          THE COURT:  -- impropriety of a smoking gun

25  standard because I am not going to apply in this case, or

1  really in any case, a smoking gun standard.  I understand

2  there are courts that think that's an appropriate

3  standard.  This Court is not one of them.

4           MR. ZEBRAK:  Thank you, Your Honor.  So just

5  by way of sort of setting the stage a little bit before

6  we get to the specific three categories, Judge Trauger's

7  decision, as Your Honor's aware, addressed each of the

8  three claims that we alleged in the case.  And in going

9  through that, Judge Trauger indicated and reinforced that

10  the idea of liability platform-wide just for all

11  infringement that occurs where the defendant only has

12  general knowledge that it may be happening somewhere,

13  that that doesn't suffice.  That wasn't our allegation,

14  and it's not our allegation.

15           Our allegation here for contributory

16  infringement is about the specific infringers'

17  infringements that we told the defendant about.  But, of

18  course, that happens.  It doesn't occur in a vacuum.  It

19  occurs against the backdrop of what defendant knows about

20  what users are doing on its platform and what it's

21  promoting in its strategy documents.

22           You know, Judge Trauger didn't say that the

23  defendant's general knowledge about use of music and the

24  types of things users are doing with music, even if the

25  defendant doesn't regard it as infringing, she didn't say

1   that that's all off limits.  That's the kind of stuff

2   we're getting at now where -- you know, the specific

3   liability in the case may hinge on what did the defendant

4   knew about specific infringers and infringements, but for

5   lots of issues in the case, aside from establishing those

6   specific elements of liability, as Judge Trauger already

7   alluded to in making clear what her decision was in

8   taking off the table, you know, from our perspective, the

9   idea that -- you know, under the defendant's logic here,

10  they would withhold documents reflecting that they know

11  of massive infringing activity as long as they don't

12  regard it as infringement.

13          THE COURT:  I don't disagree with you about

14  that.

15          MR. ZEBRAK:  Okay.

16          THE COURT:  And they're going to have to

17  explain to me why it is that any defendant in any

18  litigation in discovery gets to decide whether the

19  discoverable information satisfies the ultimate elements

20  of the claim.

21          MR. ZEBRAK:  Yeah.

22          THE COURT:  Because that's not the way

23  discovery works in federal litigation.

24          MR. ZEBRAK:  Yeah.  So I'll go through the

25  three categories quickly.

1          THE COURT:  Sure.  Let me ask you one

2   question before you start.  Is there an agreement that

3   the relevant discovery period is from December 1 of 2021

4   through June 14 of 2023?

5          MR. ZEBRAK:  We have -- sometimes --

6          THE COURT:  Or has there been an agreement

7   to limit discovery to that period?  Maybe that's the

8   better way to pose that question.

9          MR. ZEBRAK:  There is a default period that

10  we're using, and I believe Your Honor referenced it

11  correctly.  But that's not for all requests per se.

12         THE COURT:  Okay.

13         MR. ZEBRAK:  When it comes to certain

14  requests, there may be reasons to go earlier.  A lot of

15  that will just be negotiated by the parties, but this

16  dispute right now hasn't been an issue about time period

17  at all.  Thus far -- and I think the time period where

18  that would arise would be on issues of -- if it became

19  too burdensome and you wanted to cabin what the defendant

20  was searching or producing to a particular time period,

21  we'd be happy to get into that.

22         THE COURT:  Right.  Well, they've raised --

23  the defendant has raised that issue in a -- with

24  respect -- at least in the original objections, in the

25  initial objections --

1      MR. ZEBRAK:  Yes.

2      THE COURT:  -- raised that issue with

3  respect to multiple of the requests that remain in

4  dispute, but maybe that's no longer an issue.  Maybe the

5  other issues have --

6      MR. ZEBRAK:  Yes.

7      THE COURT:  -- sort of risen to the surface

8  as the primary ones that will be determinative of the

9  outcome.

10     MR. ZEBRAK:  Yes, Your Honor.  Initially the

11  defendant had very extensive objections that we've worked

12  through in many respects, including with respect to the

13  time period that's being applied for various requests as

14  a default.  So that's -- that's not an issue for today.

15          Today really, I think, Your Honor --

16  hopefully once Your Honor resolves the issue of relevance

17  and that something needs to be produced here, I think all

18  the issues will sort of resolve themselves, you know, at

19  that point after.  You know, from our perspective -- and

20  I'm going to jump right into the three categories.

21          THE COURT:  Sure.

22     MR. ZEBRAK:  You know, the defendant has,

23  after quite some time, proposed compromises on these

24  requests.  For a long period of time it was not just

25  producing anything.  Then indicated -- it tried to modify

1  these requests to have it apply with respect to what it

2  regarded as infringing content or infringing activity.

3  　　　　　You know, from our perspective, that's not a

4  workable solution because, you know, whether the

5  defendant regards it as infringing or not, of course,

6  that's important, but that's not the ceiling on

7  relevance.  You know, the defendant can't explain what it

8  would look for there unless, you know, they'd know it

9  when they'd see it.

10 　　　　　From our perspective, you know, our view is

11 that most infringers don't call out when they know --

12 when they know a whole category of content is highly

13 infringing or routinely infringing.  We're interested in

14 knowing what they knew, what they did, what they were

15 promoting, not just whether they regarded that as

16 infringement.  And so let me -- if it makes sense, just

17 jump to the three categories.

18 　　　　　THE COURT:  Sure.  Go ahead.

19 　　　　　MR. ZEBRAK:  For the first category, what

20 remains -- so the plaintiffs referred to this as

21 monitoring and control requests.  The defendant has

22 referred to what remains at issue as content moderation

23 requests.  And this concerns one RFP and one

24 interrogatory.

25 　　　　　I should perhaps start with the

1    interrogatory because I think this is real easy.  The

2    defendant has agreed to produce an org chart with the

3    same subject matter if it exists, but refuses to answer

4    interrogatory to name a couple of people on the same

5    topic.  And we just think that's silly.  You know, of

6    course, if the org chart's sufficient, if they have one

7    to produce, that would be fine, but we can't be out of

8    luck if there isn't such a document.

9            So -- but let me turn to the more -- the

10   subject matter --

11           THE COURT:  So go back there -- go back just

12   a moment to what you said.  The defendant's position from

13   the November 8, 2024, letter was that X will identify

14   persons with knowledge of programs or tools to monitor

15   the site for copyrighted music on the platform.

16           So they're not agreeing to do that now?

17           MR. ZEBRAK:  I'm sorry, perhaps I -- I

18   thought that would be a tidier category to start with,

19   but I may have done that in a way that's more confusing.

20   So if I could start again --

21           THE COURT:  Sure.

22           MR. ZEBRAK:  -- that might streamline this.

23           The defendant's current position on the

24   interrogatory is as Your Honor just stated.  And the

25   defendant correctly listed its current position in its

1    segment of the joint statement on the RFP.

2              But let me tell you why the proposed

3    narrowing of our interrogatory and RFP is problematic.

4    The RFP is -- and I'm paraphrasing now -- it's looking

5    for documents that are going to show or describe what --

6    what tools they're using or programs they have in place

7    to monitor or control users and the content that are

8    uploaded by users.  That's the RFP.  Of course, there's a

9    spectrum of relevance.  You know, what's most relevant is

10   what they're doing and not doing in the area of

11   copyright, but there's other -- other issues too.

12             So let me begin by telling the Court what we

13   think the defendant's document response would exclude,

14   because the defendant is indicating they're going to

15   provide documents sufficient to reflect use of these

16   technologies or practices to detect or limit copyrighted

17   music in posts or streams.

18             So it would -- defendant's response would

19   exclude three or four things that we think are easily

20   relevant.  One would be tools that the defendant

21   considered using but didn't adopt about copyright

22   infringement of music.  You know, the defendant's

23   capabilities for reducing infringement are not just what

24   they put into place but also what they didn't put into

25   place, but perhaps what they were aware of.  So that's

1    one item.

2                Another one is what tools defendant is using

3    to detect or limit copyright infringement outside of

4    music.  Maybe, for example, the defendant does something

5    in the area of movies that it's not doing for music but

6    easily could.  But, you know, we're going to find out,

7    because it makes much more money off of this uploading

8    and streaming of music, it's not doing that other stuff.

9                So one is outside of music in the area of

10   copyright, and the other is things that the defendant

11   considered but didn't adopt.

12               And likewise, defendant has some policies

13   about trademark and counterfeits, which, again, if there

14   are some tools or monitoring programs that defendant's

15   doing in the area of infringement that could easily be

16   applied for copyright, that's something we'd be

17   interested in and we think would be relevant.  Again, by

18   way of depth, we don't need, you know, detailed emails

19   and all that stuff.  We're talking probably about

20   presentations, guides, summary-level documents.

21               And then I just mentioned things that the

22   defendant would exclude by way of sort of subject area.

23   The other thing I'd like to mention is something that's

24   agnostic to the -- to the issue.  Defendant makes

25   reference to hate speech and other areas.  We're not

interested in exploring what it does across its site as to all the trust and safety issues in toto.

But one issue in this case, Your Honor, is the fact that defendants, if they do suspend someone, people sign back up under new accounts. And one thing that many platform providers have are tools that they use typically to relate accounts together. So if they ban someone and want to keep them off the platform, how do they figure out if someone's signed back up.

So this isn't specific to a given subject area, but if they have tools that help them identify and relate or flag accounts and users to see if they're signing back up, these are the kinds of things that would be excluded from the defendant's current proposed response.

As Your Honor indicated before, the Court already indicated that X's powers of monitoring and control over users and their posts is still relevant to the case even though vicarious isn't there anymore. And we're interested in the things I just mentioned beyond what defendant's offering to do because it's all relevant to whether the defendant took reasonable steps in response to the specific infringers and specific infringements that we've identified to it.

So it's not a platform-wide theory of

1   liability.  It's -- you know, it's what tools could they
2   have used or that -- you know, once we told them of these
3   issues.
4           THE COURT:  And you are -- just to confirm,
5   you're interested in summary-level documents, not
6   necessarily -- or not even including a custodian email
7   search, anything like that.  So what if they tell you
8   there are no summary-level documents?
9           MR. ZEBRAK:  Yeah.  So I suppose then we'd
10  be out of luck, but I find it hard to believe that there
11  aren't such things.  It could be a PowerPoint
12  presentation.  I'd imagine that, you know, the trust and
13  safety group there probably has some presentations and
14  guides and training materials that it uses to explain to
15  its staff or to its business stakeholders about what it
16  does and doesn't do.
17          You know, I think also, quite frankly,
18  Your Honor's request is a difficult one for me to answer,
19  in the sense that there will be plenty of areas where
20  custodian email searches is important to us in this case.
21  This area is probably not one of them, but --
22          THE COURT:  I was only speaking about this
23  particular --
24          MR. ZEBRAK:  Yeah, yeah.
25          THE COURT:  -- RFP No. 56 and related.

1          MR. ZEBRAK:  Sure.  Well, thus far
2    defendant -- I mean, this would have been easy if
3    defendant said -- you know, they're in touch with this
4    trust and safety group and people in it.  They haven't
5    represented to us that these things don't exist.  Their
6    issue is we're not going to assess if things exist or
7    burden because none of it's relevant.  So we haven't been
8    able to get past go on this.
9          THE COURT:  So if we -- if this wasn't --
10   and it is not my preference to rewrite discovery requests
11   in the context of a discovery hearing.
12         MR. ZEBRAK:  Sure.
13         THE COURT:  It's like doing committee work
14   at a board meeting.  But if this was rewritten to state,
15   summary-level documents sufficient to show or describe
16   the tools, programs or methods, et cetera, would that --
17   does that change the plaintiff's agreement to proceed
18   with the revised request for production?
19         MR. ZEBRAK:  It's fine with us, Your Honor.
20   Our view on this is that we're interested in unearthing
21   what they have and we're more than happy to cooperate on
22   levels of depth on searching and if it turns out that
23   there's a bunch of volume to it, but right now it's
24   been -- there hasn't been negotiation over this.  So that
25   would be fine with us, Your Honor.

1          Getting to the interrogatory, you know,
2    we've asked for essentially people with responsibility or
3    involvement with respect to the area we've just been
4    talking about.  And we've made --
5          THE COURT:  And so the difference is that
6    they only want to ask -- they only want to provide
7    details of people who monitor the site for copyrighted
8    music.  Is that --
9          MR. ZEBRAK:  Correct.  Again, not even
10   copyright generally, but copyrighted music.  And our view
11   is the power of monitoring and control they have is
12   broader than just on the issue of copyrighted music.
13          As to the interrogatory, you know, we're
14   not -- we suspect that lots of people touch this issue
15   and we've articulated, we're looking for a name or two
16   here to depose on these issues.  And they've agreed to
17   provide an org chart under RFP 44.  You know, it doesn't
18   match this language exactly, but it hits a bunch of the
19   issues we've been talking about.  And so, you know, we
20   haven't understood why they provided the org chart but
21   not the interrogatory answer which we'd, of course, need
22   if there isn't such documents.
23          Unless the Court has other questions, I'd
24   just move to the next set of --
25          THE COURT:  No, I don't have any other

1    questions.  Thank you.

2              MR. ZEBRAK:  So, Your Honor, again, the

3    defendant's joint statement and the position they've been

4    taking is that our discovery requests are consistent with

5    the theory that the Court rejected, meaning that they're

6    responsible for all copyright infringement that happens

7    just because they know it happens somewhere, some way and

8    that they allow music.  That's not our theory of the

9    case.

10             Our position on these economic requests is

11   that what they can't do is withhold documents that

12   reflect, you know, that their platform is riddled with

13   music uploads, that the defendant promotes it, generates

14   money from it, derives engagement off it, perhaps even

15   gets into the different types of music uploads there are

16   and indicates that this is what users want to do, but yet

17   the defendant's going to withhold all that unless in

18   those documents defendant recognizes and regards that the

19   content and its activity or the user activity is

20   infringing.

21             We just think that's a stunning position,

22   and it -- you know, it really defies -- you know, we

23   can't expect that they're going to -- first of all,

24   they're not the arbiters of what infringement is or is

25   (sic).  I mean, it's relevant what they understood, but,

1    you know, we want to know the things they knew and the

2    things they were doing, not just if they regarded it as

3    infringement.

4            You know, we're entitled to rely on

5    circumstantial and direct evidence, and we think these

6    requests -- I'm happy to go through them or some of them

7    in specifically, but these all relate to their economic

8    incentives.  And -- you know, and we'll explain why the

9    defendant acts the way it does in response to

10   infringement notices.  And, you know, defendant's

11   awareness that massive infringement is happening we think

12   is very relevant to the case, even if it's only going to

13   be responsible for some of it.

14           The defendant has a little bit of slight of

15   hand in their joint statement where they talk about how

16   there are millions and billions of posts about music.

17   And they talk about that as if that's going to speak to

18   the burden of this.

19           This document request, Your Honor, is about

20   use of the uploads of music and the streaming of music in

21   these, in these video files.  It's not about discussion

22   of music.  You know, it's not about defendant's awareness

23   that millions of users are discussing music.  It's about

24   the infringing activity.  And it's also, quite frankly,

25   about defendant's claim that, you know, these uploads

could be licensed by the user or owned by the user or
de minimis or fair use.  We'd like to see what their
documents reflect about what they knew and were saying
about the nature of these uploads.

So -- and, again, from our perspective, you
know, liability will hinge on the infringers and the
infringements, but all these other documents or the
context in which its happening and -- will be very
relevant to other issues in the case, including a need
for deterrence and defendant's motives for why it's
acting the way it did and the issues of willfulness as
well as some of defendant's pled affirmative defenses,
including fair use, where we're going to want to
understand the nature of who users are and the types of
things they're doing with music and what they want to do.

So -- and, again, we don't see this as an
issue of burden either.  We're -- we do recognize that
many people may touch these issues, but that's where the
parties often negotiate to something narrower in the
scope of the search of the production.  And we said we're
happy to do that.

Again, you know, we would imagine the types
of things we're talking about here, Your Honor, from past
experience in litigations like these, are PowerPoint
presentations, reports, consumer studies, surveys,

1   strategy documents where they're going to say -- and this

2   gets into the last set of requests in a moment, but, you

3   know, these sort of -- you know, these aren't

4   communication-level documents.

5           Does Your Honor want me to address any of

6   the specific requests or should I leave that at the sort

7   of high level of --

8           THE COURT:  I think probably you've

9   addressed all of the questions that I might have had for

10  you, but let me...

11          With respect to Interrogatory No. 1, one of

12  the objections -- and leaving aside infringing, I'll

13  discuss that issue with defense counsel.  But the use of

14  music, is there some disagreement over what use of music

15  means?

16          MR. ZEBRAK:  Well, let's, I think, get past

17  the issue of are we talking about people just discussing

18  music or not --

19          THE COURT:  Right.

20          MR. ZEBRAK:  -- that's not the type of --

21          THE COURT:  And is that the issue that --

22          MR. ZEBRAK:  Well --

23          THE COURT:  Because it was not my

24  understanding that that is what you were -- my

25  understanding was the way you've just described it, that

1   you were looking for uploads, streaming, those kinds of

2   things.  Not discussion about music, not, you know,

3   comments about music, not critiques of music, that kind

4   of thing.

5               MR. ZEBRAK:  Right.  So, Your Honor, to

6   that -- I think the issue here is that the defendant for

7   discovery purposes wants to say that documents about use

8   of music are simply not discoverable.  They're not

9   relevant because unless it's infringing use of music it's

10  not relevant.  And what it's trying to do is, we think,

11  apply a cramped reading of Judge Trauger's motion to

12  dismiss order where the Court indicated that, you know,

13  all use of music isn't infringing use of music.  Of

14  course, that's not our position.  But our position is,

15  you know, much of it is.

16              And, in fact, you know, the -- we'd like to

17  see what their documents reflect about what they know

18  about the types of uses of music happening because, from

19  our perspective, the things we indicate in the complaint

20  we're talking about are uploads of music videos,

21  commercial music videos or synced videos where commercial

22  music is paired with video or concert footage.

23              It's not going to be the case that

24  defendant's documents will necessarily tag that activity

25  as infringing.  And our view is we want to understand

1  who's been in charge of these issues and, you know --

2  that it's all going to be relevant to, you know, even if

3  use of music specifically doesn't establish the

4  liability.

5           So -- so anyway, so that's -- that's, I

6  think, where we stand on --

7           THE COURT:  Well, if I remove the

8  defendant's proposed I suppose -- but maybe proposed is

9  too generous a description.  But if I delete infringing

10 use of music and it's just use of music, is that going to

11 resolve the issue with respect to at least some of these?

12 With respect to Interrogatory No. 1 and maybe some others

13 that if it's just use of music as was originally --

14          MR. ZEBRAK:  Oh, Your Honor --

15          THE COURT:  -- described --

16          MR. ZEBRAK:  Excuse me.  Yes, Your Honor.

17 That would -- that would more than suffice.  You know,

18 defendant's going to point out that, you know, that there

19 may be some lawful activity that they're doing with

20 respect to use of music.  You know, for instance, I don't

21 know, partnering with respect to some promotional program

22 with someone.  You know, of course -- you know, there are

23 going to be edge cases and other things that, you know,

24 aren't going to go toward us proving our claim, but that

25 doesn't mean we sort of throw the baby out with the bath

1  water, as the expression goes.

2            THE COURT:  Well, and that's exactly the

3  reason why there's a difference in standards in

4  discoverability of information and admissibility of

5  information because admissibility -- it could be

6  inadmissible for any number of reasons.  Inadmissibility

7  based on relevance grounds at trial is a very different

8  standard than relevancy for discovery purposes.

9            MR. ZEBRAK:  Right.

10            THE COURT:  And I'll hear from defendant's

11  counsel about that.

12            MR. ZEBRAK:  Yeah.  And I think the last

13  thing here is, you know, defendant's going to point out

14  that the Court said that the mere existence of a feature

15  about music isn't a premise for liability.  And that

16  isn't our theory for liability here, but we do want to

17  see what the defendant knows about actual uses of the

18  feature.  That's what we want to ask people about and see

19  what the documents reflect.

20            So if I could, Your Honor, I'll skip the

21  specific requests but be happy to come back to that

22  later, if necessary.  And I'll just cover the last set of

23  requests here.  We fully understand that, of course,

24  defendant's going to have lots of documents about how it

25  competes in the marketplace.  We're not looking for all

1    of them.  We're looking for documents where defendant is
2    depicting its strategies and analyses about how it can
3    make changes to its platform and what practices it can --
4    it can engage in to be more like the licensed music sites
5    that we've cited in our pleadings and that the Court
6    cited.

7            You know, from our perspective, again, we're
8    not suggesting that they're going to be liable because
9    they had this plan, but we think it's very relevant to
10   the other issues in the case that the defendant
11   recognizes that this activity at issue is going to be
12   infringing because of the absence of these licenses.  And
13   it's courting the very same users that are uploading this
14   music to other platforms because it's licensed there and
15   they're courting these users to do the same thing on
16   their platform, but because there's no license, it's
17   infringing.

18           You know, those are the types of documents
19   that the defendant would withhold.  It would, under its
20   proposed logic where it's trying to limit it to practices
21   to promote infringement or infringing content, so the
22   defendant -- you know, if there's a document showing that
23   its strategies to compete with competitors, you know,
24   with respect to uploading and streaming of music, it
25   would -- it would withhold that as long as the defendant

1  in that document didn't say, oh, and we know that this is

2  going to be infringing content or that these users are

3  engaged in infringement.

4            So we'd like the ability to receive those

5  and have our experts consider them, and we think they're

6  going to hit these issues that go to the other -- you

7  know, the other facets of the case.

8            THE COURT:  All right.  Thank you very much.

9            MR. ZEBRAK:  Thank you, Your Honor.

10           THE COURT:  All right.  Let me hear from

11 whichever counsel on behalf of defendant, please.

12           MR. SHAPIRO:  That would be me, Your Honor.

13           THE COURT:  All right.  Come on up.

14           Mr. Shapiro, is it?

15           MR. SHAPIRO:  Yes.

16           THE COURT:  All right.

17           MR. SHAPIRO:  And, Your Honor, I want to

18 echo Mr. Zebrak's appreciation to you for taking the time

19 to hear us on these.

20           THE COURT:  Sure.

21           MR. SHAPIRO:  And if I may -- and I've been

22 hearing you loud and clear and reading the tea leaves as

23 lawyers do.

24           THE COURT:  Good.

25           MR. SHAPIRO:  But if I could take a moment

1   or two to do a little bit of context setting --

2              THE COURT:  All right.

3              MR. SHAPIRO:  -- and framing, just at the

4   outset.

5              We are definitively not asking the Court to

6   apply a smoking gun standard.  That is -- that is not our

7   view.  It is not our position.  But I think if smoking

8   gun standard is at one end of the spectrum of

9   impermissibility, at the other end, equally

10   impermissible, is a shotgun standard in which a party

11   says, well, we just want everything.  And that's the type

12   of gun that we are saying would be improper to be used

13   here.

14              And I think one of the most important

15   documents before the Court right now is our Exhibit B,

16   Exhibit B to the joint statement, because I think if --

17   if one were coming to this dispute or this hearing

18   reading only the joint letters and listening to the

19   statements of my brother, Mr. Zebrak, one might think

20   that X is refusing to produce anything meaningful in this

21   case.

22              THE COURT:  I am not thinking that at all,

23   Mr. Shapiro.  I am pleased that this is not an argument

24   about not producing any kind of information.  And it's

25   clear that X Corp has agreed to produce a wealth of

1    information.

2    But a party's compliance with its discovery

3    responsibilities, to some extent, even to a great extent,

4    does not mean that that party necessarily gets a pass on

5    other information that falls within the scope of the

6    discovery rules.  Because complying with your discovery

7    obligations without dispute is what's expected of every

8    party.  And this is not -- not that I'm disparaging any

9    kind of litigation that happens in federal court, but

10   this is certainly not the simplest case that any of the

11   judges in this court have before them.  And, frankly, the

12   discovery requests and the agreement to produce discovery

13   in this case is not surprising to me, and it's not -- nor

14   is it particularly impressive given the -- and I mean

15   impressive in terms of me saying, oh, well, X Corp has

16   agreement to produce so much information that it's not

17   unreasonable for them to draw the line somewhere.

18   Because this is the kind of information,

19   exactly the kind of information that I would have

20   expected that a defendant in this kind of litigation,

21   particularly one of the scope of business and resources

22   of X Corp, would agree to produce with the issues that

23   are before the Court.

24   So don't -- don't concern yourself that I'm

25   under any misapprehension that X Corp is being totally

1    obstreperous in this case.  If that was what you
2    understood from my earlier comments, then I want to
3    clarify that, that I do not think that X Corp is -- has
4    strong-armed the plaintiffs on producing discovery of any
5    kind.
6              I think that you-all have worked very hard
7    to -- to reach agreements about discovery that both sides
8    agree is relevant and discoverable.  And I think you've
9    worked hard to try to come to some agreement about the
10   remaining discovery, but I do think that there is --
11   there are a lot of resources being spent on this
12   remaining discovery that -- that may not necessarily be
13   justified, but I'm going to give you a chance to try to
14   convince me otherwise.
15             MR. SHAPIRO:  It's always worth a try,
16   Your Honor.
17             THE COURT:  It is.
18             MR. SHAPIRO:  And I appreciate and
19   acknowledge what you said a moment ago, which is,
20   absolutely, the fact that we have reached agreement on
21   some number of issues doesn't -- isn't decisive one way
22   or another -- whether we're right or wrong on the
23   remaining issues.
24             But there's another aspect to I think this
25   Exhibit B, because I think what Exhibit B reflects, at

1    least in my view, is the extent to which the issues that

2    are really at the core of this case, under the broad

3    discovery standard of the federal rules, have been

4    addressed and agreed to by the documents that X is

5    already agreeing to produce.  And most of what we're

6    arguing about here are, on the one hand, I think going to

7    be edge cases or edge points for the plaintiff's case

8    but, nevertheless, would be asking X to dig through whole

9    swaths of material for very limited potential benefit to

10   the plaintiffs.

11               THE COURT:  Well, I'm not so sure that

12   Judge Trauger thinks it's of limited benefit.  Of course,

13   I don't speak for Judge Trauger and she -- you know, if

14   this matter gets in front of you, she'll certainly tell

15   you whether any of us have correctly construed what she

16   meant.

17               But my reading of Judge Trauger's memorandum

18   opinion is that she found it necessary to go to the

19   extent of stating that they -- that powers of monitoring

20   and control over users and their tweets are relevant to

21   the claim that she declined to dismiss and that the

22   dismissal of the two other claims -- again, this is my

23   extrapolation of her order, but the two -- dismissal of

24   the two other claims should not be construed as a

25   determination -- in fact, she went out of her way to say

1    it was not a determination that information that might

2    have been -- and I'm going to use the word directly in

3    quotation marks, but more directly related to those other

4    claims is not necessarily no longer relevant.

5           There must have been a reason.  I mean,

6    judges don't ordinarily include comments, include

7    expressions of their thoughts in their orders without

8    there being some reason for that.  And my interpretation

9    of Judge Trauger's statements in her order is that she,

10   because she's very, very bright and -- that she predicted

11   that this might be an issue and she wanted to make clear

12   to all of us, the parties especially, and anybody else

13   who might be looking at it later whether that was me or

14   whether it was her looking at it at some later time after

15   she looked at maybe hundreds of other cases and no longer

16   had immediate recall of this one, that she was not saying

17   that the dismissal of those two other counts meant that

18   information that might have been more willingly --

19   discovery that might have been more willingly produced

20   with those two counts remaining in the case was no longer

21   discoverable.  I think that she went out of her way to

22   say just the opposite.

23           MR. SHAPIRO:  100 percent, Your Honor.  And

24   that is why, as reflected in Exhibit B, X has agreed to

25   produce, for example, in response to RFP No. 7, documents

1   sufficient to identify policies and procedures concerning

2   copyright infringement by platform users;

3           RFP No. 9, documents concerning its analysis

4   of the adequacy of its copyright infringement policies;

5           No. 10, documents sufficient to show

6   policies, practices, procedures and processes, as well as

7   related guidelines, training materials, interpretations

8   of policies that X has adopted concerning DMCA notices

9   and counter-notices;

10          RFP 15, documents sufficient to reflect

11  and/or explain how X receives, processes and/or tracks

12  infringement notices.  X will also produce summaries and

13  analyses of how X's system for infringement notice

14  tracking is working, including any reports on

15  deficiencies.

16          No. 20, documents sufficient to reflect the

17  reactivation of services for any platform user whose

18  account was permanently suspended or terminated pursuant

19  to X's DMCA policy.  X will also produce ticket data,

20  case data reflecting suspensions, custodial documents.

21          I could go on, 20, 21 -- excuse me, 21, 22,

22  28, 29, 30.  All of those are responsive to that

23  statement by Judge Trauger about our ability to control

24  and monitor the site.  I think she doesn't want us coming

25  in and saying "all of those things are off limit."  But

1   the motion to dismiss order, which severely narrowed the
2   case, has to mean something, I would submit, regarding
3   discovery.
4          So if the case now -- I'm not saying that
5   this is the whole universe, but if the heart of the case,
6   what the plaintiffs are asked to prove here, is whether X
7   did one of these three things listed at the end of the
8   motion to dismiss or in the order on the docket, No. 1,
9   providing more lenient copyright enforcement to verified
10  users, No. 2, failing to act on take-down notices in a
11  timely manner, and No. 3, failing to take reasonable
12  steps in response to severe serial offenders, it's pretty
13  easy to see what discovery could and should look like in
14  a case where those are the three things you're trying to
15  prove.  That doesn't mean that only documents or evidence
16  going to those three things is discoverable, but that's
17  the core.
18         And it is the plaintiffs, we feel, who are
19  turning this into a needlessly burdensome and inefficient
20  case.  They are going to want to prove that we're
21  providing more lenient copyright enforcement to verified
22  users.
23         We are answering all of that.  We're giving
24  them all the documents on that.  They're going to be
25  asked to prove whether we're failing to act on take-down

```
1    notices in a timely manner.  We're responding to all of
2    that.  We're giving them the smoking gun that they need
3    if it's there.  They're going to be asked to prove if
4    we're failing to take reasonable steps with regard to
5    severe serial infringers.  We're giving them all of that.
6              THE COURT:  Well, what I don't understand
7    about some of your -- some of the defendant's position on
8    these requests for production, Mr. Shapiro, is that
9    there's -- at least the attempts at resolution have
10   resulted in an acknowledgment by the defendant that you
11   will produce some of this information as it concerns the
12   use of infringing music.
13             Well, to me, that's even more burdensome.
14   If you're going to compile the information and then make
15   a determination -- well, I think there's two issues, one
16   of which is the one that Mr. Zebrak described, which is
17   that whether it's proper for a party to -- for a
18   defendant to make a determination about whether something
19   is -- constitutes the very issue that's elemental to the
20   case or at the crux of the case.
21             But even setting that aside and viewing this
22   in terms of burdensomeness, it's even more burdensome, is
23   it not, for -- if you're going to compile all of this
24   information anyway for the defendant then to make a
25   determination about whether that information is
```

1   infringing or not in an effort about what has to be
2   produced and not produced.  So I don't think that the
3   burdensomeness is particularly -- a particularly
4   compelling issue.  Maybe -- maybe relevance.
5              Although one thing that I do want to have
6   happen is I want to see all of the discovery requests and
7   responses because I don't have the specific
8   interrogatories and requests for production that are not
9   in dispute.  I have the ones in Exhibit A, and then I
10  have a general description in Exhibit B.  But it occurs
11  to me that there may be sufficient overlap in what --
12  although you-all are very good lawyers.  I suspect if
13  there was sufficient overlap, we wouldn't be here today.
14             But it may be that what I find is that there
15  is enough overlap in what X Corp has already agreed to
16  produce in response to some other requests for production
17  that what the plaintiffs continue to request is just
18  superfluous or more of the same kind of thing.  So I do
19  need to see all of the discovery requests and responses.
20  Can you go ahead and just file those as a supplement to
21  today's proceeding?
22             MR. SHAPIRO:  Yes.  We're happy to do that.
23             THE COURT:  Okay.  And then I interrupted
24  you, Mr. Shapiro.  Go ahead.  If you can get back to
25  where my train of thought was, good luck.

1          MR. SHAPIRO:  No, I certainly can.  And I

2    think you've characterized it in a way that's consistent

3    with what we're saying here.  And reason I started with

4    this Exhibit B is we're providing most of it, at least in

5    the ways that are relevant to the case already.

6          But asking us to go and find everything

7    relating to music or even uploads of music, whatever it

8    might be, that anyone has discussed or considered at

9    X Corp is simultaneous --

10          THE COURT:  I'm not sure it's that broad,

11    though.  And I think that's where the sort of ships

12    passing in the night comes in, Mr. Shapiro.  I don't

13    think it's everything that anyone may have discussed or

14    considered.  That's why I wanted to be very specific with

15    Mr. Zebrak about what it was that was being requested and

16    that it is these summary-level, not communication-level

17    documents.

18          So that's something different.  It's not

19    a -- it is not a custodian records search.  It is a

20    wherever X Corp maintains summary-level documents, it's

21    that kind of a search.  And it's not every communication

22    in which that might have been discussed or considered.

23    It's, you know, what are the final documents that those

24    discussions or considerations produced and not all of the

25    work materials that went into the production of those

1   documents.

2           And I do think there's a difference in terms

3   of burdensomeness.  There may be even a difference in

4   terms of relevancy, but certainly in terms of

5   burdensomeness with respect to those two kinds of

6   documents.  So that's why I wanted to be very specific

7   with Mr. Zebrak about that.  So I don't think that

8   they're requesting everything that any person has

9   discussed or considered with respect to this additional

10  categories or topics.

11          MR. SHAPIRO:  That's fair, Your Honor.  I'm

12  looking at page 23, this is our portion of the joint

13  statement where we've prepared a chart.  And I found when

14  I was preparing for this hearing that our -- we've laid

15  out in charts, you know, what the request and what our

16  proposed compromise is on each of -- I find that's, in

17  some ways, an easy way to follow it.

18          So I'm looking at page 23 of Docket No. 109.

19  And the plaintiff's request was all documents and

20  communications, including reports, studies, research,

21  presentations, surveys or analyses concerning the use of

22  music on the platform.  And I hope that the Court can

23  see -- maybe it's now been narrowed orally by Mr. Zebrak,

24  but I hope the Court can see why that's sweepingly broad

25  and we feel not appropriate to the needs of this case as

1    narrowed by the motion to dismiss.

2              THE COURT:  Well, it is broad, all documents

3    and communications.  But I think Mr. Zebrak has narrowed

4    it.  I think he did that before and I think he's

5    certainly done it today and confirmed with me that it is

6    summary-level documents, not communications-level

7    documents.  But I think where the real point of departure

8    occurs is not what the kind of documentation is, but what

9    X Corp is willing to produce, which is only with respect

10   to some determination it makes of whether that is

11   infringing music or not.

12             MR. SHAPIRO:  So let me take a run at that.

13             THE COURT:  Okay.

14             MR. SHAPIRO:  So there's the burden point

15   and there's -- there's the relevance point.  And

16   Mr. Zebrak and his firm and I and my firm, we've been on

17   opposite sides in cases sort of similar to this, and the

18   fact is it is not at all unusual, unfortunately,

19   sometimes for our clients, for there to be documents in

20   which -- maybe the word infringing is a little narrow, we

21   could change it to unauthorized -- in which there are

22   documents or presentations in which a company's saying,

23   wow, we've got a lot of unauthorized music.  Or I've had

24   a case where it was movies, we've got a lot of

25   unauthorized videos up here.  What are we going to do

1  about it?  Are they drawing a lot of eyeballs?  What
2  should we do about this?

3          In our view, we would produce that, for
4  sure.  Now, someone doesn't need to say, oh, I looked at
5  this thing and I fear it's infringing.  But there will
6  also be lots of just discussions about the fact that --
7  I'm guessing because I haven't looked at the documents,
8  I'm guessing the way that Mr. Zebrak also has been
9  guessing.  But there will be documents in which people
10  say things like, we've had a lot of people listening to
11  music or people aren't listening to music.

12          And that's where we have a dispute.  Their
13  view is that's relevant, despite the narrowed nature of
14  the case, it's within the realm of relevance because
15  there's going to be a -- you know, a piece that leads to
16  another piece to another piece of a story we're going to
17  tell about X, I guess, providing more lenient enforcement
18  (indiscernible).

19          THE COURT:  Did you ask Mr. Zebrak that
20  question?  Did you say, well, what if a documents says
21  there are lots of people listening to music or not
22  listening to music and what are we going to do about
23  that?  Did you ask him, is that the kind of documentation
24  that falls within the scope of what the plaintiffs are
25  requesting?

1          MR. SHAPIRO:  In meet and confers, maybe not

2     that exact example, but, yes.  In the meet and confers we

3     said, well, you're just asking for us to talk about

4     whether people like music on the site, and we don't think

5     we should have to --

6          THE COURT:  And I think you've acknowledged

7     that that's not inclusive in what they're requesting is

8     whether people like music or don't like music, that it's

9     something more than that.  But I'll hear from Mr. Zebrak

10    again and have him confirm that.

11          I mean, this is the whole point of

12    requirement for you to try to resolve these disputes.

13    And I will tell you that the frustration from this side

14    of the bench -- and not specific to this case

15    necessarily, although there's some undertones of it

16    maybe.  But the frustration on the judge's part is that

17    we get to a discovery, either a telephonic discovery

18    conference or an in-person discovery conference, and it

19    seems to be that there are two lawyers who are maybe

20    saying, well, we're not that far apart on something or,

21    you know, this is what we are saying we don't want to

22    have to produce, and then the other side stands up and

23    said, well, that was not what we were asking for anyway.

24          And I wonder -- I always wonder, why didn't

25    you have that -- why did I need to be involved in that

1    conversation?  Why couldn't you have that conversation

2    and say -- you know, why couldn't you have just said to

3    Mr. Zebrak, well, are you looking for these kinds of

4    things of -- of a summary of here's what people are

5    listening to or not listening to and what do we need to

6    do to try to get more people to listen to X, Y and Z?

7              I mean, there may be something in there that

8    actually falls within relevancy in this case, but just to

9    use your example.  I'm just trying to figure out how far

10   apart you really are on what should be produced and not

11   produced.

12             And I'm not going to go so far as to limit

13   it only to infringing music.  And I understand that

14   you're saying that maybe there's a better description

15   because infringing has a very specific --

16             MR. SHAPIRO:  It's legal.

17             THE COURT:  -- legal connotation.  And it is

18   not up to X Corp to determine whether something is an

19   infringement or not; although, there might be

20   circumstances in which in monitoring of its own site it

21   makes that determination, and that might be highly

22   relevant to this litigation.  But I'm not going to -- I'm

23   not going to limit -- whatever I ultimately direct be

24   further produced in discovery, it's not going to be

25   limited to infringing music.

1          That's why I was trying to figure out if

2     there is some use of music description that you could

3     agree to.  And I'm happy to have you-all have some more

4     conversations about that and, you know, let me know if

5     you reach an agreement about more of these discovery

6     requests that are in dispute because now you do -- are

7     both on the same page about what use of music means.

8          MR. SHAPIRO:  Your Honor, we would -- so I

9     believe that we had floated unauthorized to the other

10    side in meet and confers and they did not accept that,

11    but I could be wrong and I -- we would absolutely modify

12    our proposed compromise to unauthorized.

13         Where the gap between us is, even if

14    we -- even if we're no longer talking about the literal

15    language of the RFP, which asks for all documents, if

16    we're asking about just the use of music generally on the

17    platform, our view is that under the federal rules, under

18    discovery, the discovery standards, that is still outside

19    what is appropriate in this case, just generic

20    presentations or surveys about use of music on X in a

21    case that has been narrowed to these three main points.

22    Again, not saying those three points are the only things

23    that are the topics of discovery, but in that case use of

24    music generally is not a proper topic for discovery.

25         THE COURT:  Well, I understand that the

1    scope of liability has -- of potential liability has been

2    limited significantly, but that still remains that the

3    powers of monitoring and control over users and their

4    tweets and the economic incentives to tolerate

5    infringement, including because of things like

6    decision-making regarding licensing, those are all

7    arguably, at least, components of the monitor and control

8    and economic incentives of the outcome of what X Corp is

9    doing or not doing for purposes of the remaining count in

10   this litigation.

11           I mean, I -- that's -- it should be no -- as

12   you said, Mr. Shapiro, you're a good tea leaf reader and

13   it should be no surprise -- well, you didn't say that,

14   I'm saying that because obviously you are.  And it should

15   be no surprise to you that that's at least where I'm

16   headed in this case is to find that these discovery

17   requests with some maybe slight modifications -- and

18   that -- are going to -- are likely going to be -- are

19   likely going to proceed.

20           That's why I wanted to see, though, if this

21   same information is already being requested in another

22   discovery request, either an interrogatory or request for

23   production, because if there's one thing I've learned

24   about lawyers in the years that I've practiced and since

25   I've taken the bench is if there's one way to request

1    something, lawyers are going to find five other ways to

2    request the same thing and demand that all five of those

3    have to be responded to, even though they ultimately

4    produce the same information.

5              So I want to see the other interrogatory

6    requests and requests for production.  And that's why I

7    appreciate that you put together Exhibit B, because if

8    X Corp is already agreeing to produce information that is

9    broad enough, that it would include the information

10   requested in these remaining disputed discovery requests,

11   then there's really nothing left to argue about.  You're

12   already -- you've already agreed to produce those.  So

13   that's one possible resolution.

14             But if -- even if those -- even if the

15   agreed-upon discovery is not that broad, I still think

16   that there -- under Judge Trauger's decision and her

17   reference to there still being discoverable information

18   notwithstanding the dismissal of two counts -- and I

19   agree with you, there has to be a point for her order.

20   And the dismissal of those two counts of liability

21   doesn't mean that the plaintiffs can put you -- can put

22   X Corp to the same task that it would if there were -- if

23   their original claims of liability were proceeding.

24             But just as you said, there's, you know, two

25   ends of the spectrum of the shotgun approach and the

smoking gun approach.  There's a whole lot of daylight
between those two.  And I think these discovery requests
are likely going to fall somewhere in the middle, maybe
not exactly as requested.

What I frequently do is give the parties
some guidance about what I think is a more reasonable
discovery request and then leave it up to them to go back
and work out the specific parameters because, again, I
can rewrite discovery requests, but I've got plenty of
work to do that -- without doing the lawyers' work for
them.

So, go ahead.

MR. SHAPIRO:  So as you were saying that, I
was thinking again about something you said right at the
beginning, which is that it's not necessarily typical for
a judge to include a sentence or two at the end of an
order on a motion to dismiss about discovery the way
Judge Trauger did.  And what I believe Judge Trauger was
trying to do there was to preclude us from coming in and
saying -- so the contributory infringement claim,
Count Two, remains.  And that's one where she correctly,
I think, applied the foster standard and said we had to
have been doing something that affirmatively encouraged
or fostered infringement.

And she didn't want us coming in and saying,

okay, because of that, you are not entitled to see, for
example, documents sufficient to show how we track
infringement notices or documents concerning the adequacy
of our copyright infringement policies because that
doesn't go to whether we're encouraging it.

All of these things that we've listed in
Exhibit B -- not all of them, but many of them.  Because
you could imagine if we were being super-aggressive
lawyers and she hadn't included that sentence, many of
these items listed in Exhibit B, we would be saying
that's no longer in the case because you got rid of
vicarious liability.  And anything that has to do with
economic incentive or monitor and control went out the
window with vicarious liability.

Well, it didn't, and so we were not able, in
response to a lot of these RFPs, to argue that they're no
longer in the case, and that's why we've agreed to these.
So that's how I think Judge Trauger's statement at the
end of her motion to dismiss order can be squared with
the positions that we're taking here.

I don't want to take up too much of your
time.  I wanted to mention just -- respond to one or two
of the specific -- of course, to answer any questions you
have, but one or two of the RFPs that were discussed by
Mr. Zebrak because there's one on which I really hope

1    you're going to rule for us.

2                THE COURT:  All right.

3                MR. SHAPIRO:  I hope you're going to rule

4    for us on all of them.  I don't want to be indicating

5    that some are less important, but this RFP 56,

6    Interrogatory 23 about the -- the trust and safety teams.

7    Here we're not even trying to limit it to infringement.

8    We're just saying we should not -- because this would be

9    burdensome.  We should not have to go through and produce

10   materials about what our trust and safety team, how it

11   monitors because most of what the trust and safety team

12   does, I can represent this as an officer of the Court, is

13   not about copyright policies.  It is about child porn,

14   hate speech, disinformation from foreign actors, fraud,

15   spam.  It's huge, and there are all different kinds of

16   tools that are used.

17               And I heard Mr. Zebrak saying, well, maybe

18   there's a tool you use to filter out Russian election

19   interference and that might be interesting to us because

20   maybe we can argue that you should have used that in

21   copyright or maybe there's something you use about child

22   porn and, you know, we --

23               THE COURT:  I'm not really sure that that

24   was his argument.  I think his argument was that is there

25   something that you use with respect to, for instance,

1    copyrighted movies or other media, but not something that

2    is a completely different consideration like child

3    pornography or hate speech or antiterrorism, those kinds

4    of things.

5         Because you can be assured, Mr. Shapiro,

6    that if that is the scope of what Mr. Zebrak is looking

7    for, that's not going to be permitted.  And if we need --

8    if that means that the -- the request for production

9    needs to be written -- rewritten or the interrogatory

10   needs to be rewritten to make it clear that it is, you

11   know, use of music only or we could say use of music and

12   other entertainment media, I mean, I think there are ways

13   to narrow that.

14        But I will agree with you that if what the

15   plaintiffs are requesting is that you have to produce all

16   the summary-level documents of your trust and safety team

17   without regard to what the subject is of their

18   monitoring, that's not going to be -- I am not going to

19   allow that scope of discovery.  And I'll hear from

20   Mr. Zebrak about whether there's some way to rewrite this

21   request for production and this interrogatory to make

22   that clear, some further refinement besides some

23   summary-level documents.  I agree with you, and I don't

24   think that was the scope, but if that was the intended

25   scope, then you already win on that issue because it is

1  not going to be that broad.

2          MR. SHAPIRO:  All right.  Unless Your Honor

3  has any other questions, I'll cede the podium.

4          THE COURT:  Not unless you -- no, I don't.

5  Thank you very much.

6          MR. SHAPIRO:  Okay.  Thanks.

7          THE COURT:  Mr. Zebrak, let me hear from you

8  with respect to that specific issue about the --

9  Mr. Shapiro has now introduced a new phrase, the trust

10 and safety team.

11         MR. ZEBRAK:  Sure.  Well, Your Honor, I'm

12 going to address that specifically.  And I do want to

13 zoom out, though, a little bit at some point and reset

14 where we are, because we -- it's not that we appear far

15 apart.  We are far apart.

16         And we've had -- I've been negotiating this

17 discovery with them, I've been on every single conferral

18 since the very first one in June.  I've negotiated with a

19 handful of Mr. Shapiro's colleagues.  He then got

20 involved after Judge Trauger had a conference with us in

21 June, it was apparent that neither he nor local counsel

22 were on any of the conferrals.  I've since then

23 negotiated these with him.

24         He's rejecting positions that the defendant

25 knows are not our current position, Your Honor.  I'm not

1    modifying these verbally here today for the first time.

2    We've done this in conferral after conferral.  We've done

3    this in writing, including on submissions on this very

4    matter.  And it's -- I think it does a disservice to the

5    distillation of these issues to have that kind of back

6    and forth.  I'd like to address a couple of specifics.

7                    THE COURT:  Sure.

8                    MR. ZEBRAK:  As to that specific request,

9    Your Honor, I meant what I said when I stood up the first

10   time and said, of course there's a spectrum of relevance.

11   And I believe I said we're not looking for everything the

12   trust and safety department does, and that the most

13   relevant subject areas were the ones involved in what

14   else they're doing for monitoring and copyright.

15                   I indicated for copyright outside the area

16   of music and I also mentioned trademark and counterfeit

17   issues.  And I also mentioned -- and I even specifically

18   said we're not here talking about what they're doing to

19   monitor for hate speech.  So instead Mr. Shapiro used the

20   example of election interference.  Substitute in any one

21   of a half a dozen other sorts of issues, Your Honor.

22   That's not what we're here for.

23                   I indicated it was the core subject areas

24   that I focused on.  I also said another issue concerns if

25   they have tools that allow them to see if a user who they

1    suspended and said get off the platform is coming back.

2    You know, and I said that that's not limited to a given

3    category of speech.  That's just a tool.  And, you know,

4    so as to those, I think we've narrowed them.  I've done

5    it verbally.  If it'd help, we can redo the document

6    requests.

7              One of the things that the Court asked

8    about, Your Honor, is for the parties to file the

9    requests and the responses.  And, of course, we're happy

10   to do that.  I also have multiple copies here for

11   everyone if the Court wants paper copies.

12             But the issue is the discovery -- you know,

13   Mr. Shapiro's position is we ought not to comply with

14   these requests because we're doing -- we're acting

15   reasonably in response to other requests.  And he

16   described this as an edge -- maybe not the word edge.  He

17   said this isn't -- you know, that this isn't important to

18   our case.

19             These documents are very important to our

20   case.  And I'll go through that in a moment, but on

21   the -- on the requests and the responses, the defendant

22   would have pointed out if it was already providing any of

23   the things we're arguing about in response to something

24   else.

25             So I appreciate that the Court is willing to

1  undertake that work, but I think the defendant's already

2  done that work by not pointing out -- in all the examples

3  Mr. Shapiro read aloud, Your Honor, those are not things

4  sought by today's request at issue. Those are all about

5  their specific responses and policies about what it does

6  as to copyright infringement and notices and repeat

7  infringers and policies. It's not the sorts of things

8  that we're talking about today. So, you know, he cited a

9  bunch of things that, yes, are very relevant, but it

10 really amounts to -- but I don't think there's anything

11 in these other requests. I just wanted to point that

12 out.

13        And as to the other areas we're talking

14 about, Your Honor, their position amounts to, because we

15 can't do everything, we'll give you nothing. And, you

16 know, we think we've shown relevance and we need

17 something. And we've indicated the something that we're

18 looking for, and that it's not sought by these other

19 requests.

20        You know, the defendant has indicated that

21 the case has been narrowed substantially. I'd like to

22 address that, Your Honor. The lines between direct

23 infringement and secondary infringement are -- can be

24 very difficult to ascertain.

25        THE COURT: I think Judge Trauger's already

1    made that clear, as has the Supreme Court already made

2    clear --

3                    MR. ZEBRAK:  Yes, Your Honor.

4                    THE COURT:  -- they're very, very blurred

5    lines.

6                    MR. ZEBRAK:  Yes, Your Honor.

7                    THE COURT:  Maybe blurred's not the right

8    word --

9                    MR. ZEBRAK:  Right.

10                   THE COURT:  -- they're not bright lines, at

11   least.

12                   MR. ZEBRAK:  Yes.

13                   THE COURT:  And that's part of the

14   difficulty in determinating -- in determining, in

15   determinations about the scope of discovery is that the

16   lack of bright lines with respect to the different kinds

17   of infringement means that there's going to be

18   information that's going to be broadly relevant, even

19   though there's been a narrowing of the ultimate liability

20   issues.

21                   MR. ZEBRAK:  Right.  Yes, Your Honor.  And

22   what I wanted to say on that front is that the lines are

23   murky at times not just between direct and secondary, but

24   also within the secondary, you know, as to which

25   doctrine, you know -- and sometimes conduct can violate

1    more than one or it best fits under one.  And

2    Judge Trauger's approach in the motion to dismiss was to

3    go with the doctrine that the Court deemed to be the

4    clear best fit to the case.

5              But the defendant's approaching discovery as

6    if we now have a weak case or a narrow case.  Your Honor,

7    this is the case that Judge Trauger thought best fit the

8    allegations, which, as we pled, the defendants are liable

9    for, you know, the specific infringers and infringements

10   that we brought to their attention.  That's the touch

11   point for liability.  But that doesn't mean that all this

12   other stuff about their economic incentives -- we're far

13   apart because what they want to do is limit everything to

14   just what they did in response to notices and what are

15   their copyright policies.  They don't want to get to

16   their economic incentives and have come into the Court

17   what they know about what users are doing with music.

18             Some of it's going to be infringing use;

19   some of it won't be infringing.  If it shows that it's

20   not infringing, well, that will be something they want to

21   cite to and, quite frankly, should want to get into the

22   case.  They claim it helps them to the end that they

23   believe that not everything's infringing.

24             But much of it will be infringing.  And it

25   will be infringing whether or not there are documents

1   that talk about use of music breakdown, ah, here it was a

2   commercial music video or here it was concert footage.

3   So it may break it down into those categories or it might

4   talk about it broadly, but we are far apart.  This is not

5   an issue of a failure to communicate.  This is an issue

6   of the defendant having a very aggressive position on

7   relevance.  So --

8               THE COURT:  What about this offer of

9   Mr. Shapiro to substitute the word unauthorized for

10  infringement?  Does it have any -- is it a -- what is the

11  phrase, a difference without a distinction or a

12  distinction without a difference?  Does it make any

13  difference?

14              MR. ZEBRAK:  Your Honor, it doesn't.

15  It's -- you know -- you know, the defendant's being very

16  aggressive in what it wants to constrain the evidence in

17  the case to be.  And, you know, our view is that if they

18  have documents that are talking about how users want to

19  upload music and they're promoting it, they're making

20  money from it, they're drawing engagement from it, it may

21  even break down the types of music that they're

22  uploading.  Ah, people are uploading concert footage or

23  they're uploading synced videos where they take -- you

24  know, pick Your Honor's favorite's artist and pair that

25  song with some video that the person combines it with and

uploads it.  Could talk about that sort of activity,
could be a whole range of it.

But the point is at some point if there's
trial where evidence gets put in, Judge Trauger's going
to deal with the Rules of Evidence and decide what comes
in.  But right now they're trying to block it all out of
the case and say the only thing you get is if we
internally acknowledge that it's unauthorized or it's
infringing.  Now, most defendants -- now, some of them do
and this defendant may have internal documents where they
acknowledge that users are engaging in a lot of
infringement.  Those are certainly relevant.  But suffice
it to say that many departments don't want to acknowledge
that a lot of the activity that they're making money from
and building their business on is infringing.  So they're
not going to want to use words like infringing and
unauthorized.

So, again, if they're now arguing burden,
which they hadn't done all along, this was all about
relevance, they should be ordered to, in our view, make a
production -- and we can negotiate with them over the
scope, but it needs to be informed based on them having
some understanding of what exists, Your Honor.  They
haven't looked into anything.  They haven't said it's too
burdensome.  They've just said it's wholly irrelevant.

1          You know, we're seven months into discovery.
2     We served these requests in May.  Substantial completion
3     of document production's due in mid March, Your Honor.
4     The parties are now actively negotiating over search
5     terms and email custodians.  We're now arguing on
6     something that Judge Trauger already indicated is
7     relevant.  And we're not looking to push the boundaries
8     on burden, but they're taking positions that I think
9     Your Honor's already recognized, you know, actually are
10    relevant.  And, you know, the idea of us negotiating with
11    them for months on stuff that we should have had long ago
12    within what they've agreed to do, you know, we will, of
13    course, do that, Your Honor, but we'd like to resolve
14    these and move on as soon as we can.
15              THE COURT:  All right.
16              MR. ZEBRAK:  Thank you.
17              THE COURT:  Thank you, Mr. Zebrak.
18              Anything else, Mr. Shapiro?
19              MR. SHAPIRO:  Just briefly, Your Honor.
20              You might not be surprised to hear that I
21    respectfully disagree with Mr. Zebrak's characterization
22    of what has happened in these meet and confers.  I've
23    been on some and I've gotten reports on every one of
24    them, and we've come out of them, and I believe my
25    representations were entirely accurate, No. 1.

1          No. 2, the -- on the content monitoring,

2    Mr. Zebrak's up here saying, well, this is all, you know,

3    silly of Mr. Shapiro to say.  It's in the RFP itself.

4    We've never received a narrowing, other than, well, what

5    we're primarily interested in.  And we've come back with

6    a proposed compromise.

7          No. 3, on these RFPs involving monetization

8    or the -- excuse me, the example Mr. Zebrak gave about

9    monetization, RFP No. 48, we discussed this on page 18,

10   18 out of 31 in the joint statement.  I think -- yes, I

11   guess they have -- it is on the docket page numbers, that

12   is.

13         RFP No. 48, they've asked for documents

14   sufficient to show or describe technical process by which

15   ads are promoted, content are placed on the platform,

16   et cetera.  We say we are willing to produce documents

17   sufficient to describe aspects of any algorithm or

18   technical process for advertising that promotes or

19   monetizes infringing content over noninfringing content.

20         I believe that's one of the ones we

21   compromised on.  They've accepted that.  I think that

22   suggests that a similar approach in some of these other

23   RFPs and rogs should also be acceptable.

24         Finally, Mr. Zebrak made reference to

25   problems -- their desire to learn about whether suspended

1   users can come back onto the service.  That's one of the
2   items that's already listed in Exhibit B.  And as
3   Your Honor said when I was up here a little bit earlier,
4   some of these are items that have already been asked for
5   in one way and they're being asked for in a somewhat
6   different way.  That's neither appropriate nor necessary.
7   This item of suspended users and how they come back onto
8   the site is already covered.
9                THE COURT:  Which one is that on Exhibit B?
10                MR. SHAPIRO:  That is 22, documents
11   sufficient to reflect the reactivation of services for
12   any platform user whose account was permanently suspended
13   or terminated pursuant to X's DMCA policy.  X will also
14   produce documents reflecting policies and practices
15   regarding any access that suspended users have to their
16   accounts.
17                So for all of these reasons, Your Honor, I
18   think that while we may have a disagreement about whether
19   the case as framed in Judge Trauger's motion to dismiss
20   order is a substantial narrowing of the case or -- as we
21   believe, or inconsequential, as Mr. Zebrak was trying to
22   suggest, it certainly has to be of some import.  And I
23   hope Your Honor will side with us on as many of these
24   disputes as you see fit.
25                THE COURT:  All right.  Go ahead.  Thank

1    you, Mr. Shapiro.

2              Go ahead, Mr. Zebrak.

3              MR. ZEBRAK:  Your Honor, first of all, I

4    didn't refer to Judge Trauger's ruling as

5    inconsequential.  What you just heard is case in point

6    for why we think we need a ruling on this, Judge.

7    Mr. Shapiro just referenced two pieces of discovery.  So

8    he said on Exhibit B, RFP 22 addresses the same thing

9    that we were asking about under RFP 56 under the -- you

10   know, under the tools and practices content moderation

11   that we were talking about.  That's obfuscation.  One is

12   not the same as the other.

13             RFP 22 that he has on this Exhibit B has to

14   do with the defendant reactivating a service for

15   somebody, meaning someone from the defendant's

16   organization suspending them and then turning them back

17   on or the person turning itself back on, maybe if there's

18   a click-out or something.  That's RFP 22.

19             That's different than the thing we were

20   talking about in the first category about monitoring and

21   control, where we were asking about tools the defendant

22   may use to relate one account to a new account.  For

23   example, if it says I don't want this Zebrak guy on my

24   site anymore and they have some flag or monitoring thing

25   to see if Zebrak signs back up again, those are the kinds

1    of things we were talking about.

2          The point I made before, I stand by, which

3    is if the defendant in any way reasonably thought that

4    anything that they've promised to do in this exhibit

5    forestalled what we were moving on today, they would have

6    raised it, and they haven't.  And 22 is not something

7    that addresses 56.

8          And secondly, I thought I heard Mr. Shapiro

9    say that plaintiffs have agreed to accept -- so,

10   Your Honor, what Mr. Shapiro tried to do is indicate that

11   our refraining from moving on RFP 48, which is something

12   we resolved in an effort to narrow the issues for today,

13   somehow means that we're willing to accept their

14   modifying all the requests that we've just argued about

15   with the word infringing.  That is absolutely not the

16   case, Your Honor.

17         We -- we agreed to remove four requests from

18   today's hearing, Your Honor, that you saw through the ECF

19   notice, but it's not because we deemed this modification

20   of the request with the word infringing as an acceptable

21   way to narrow the discovery that's otherwise relevant.

22   We did it recognizing that we wanted to narrow the issues

23   for today and that, with respect to RFPs 47 and 48, we

24   could use the combination of what's in the public domain

25   about their system, which they themselves specifically

1  directed us to when they encouraged us to think further

2  about this, with them agreeing to identify people in

3  response to Interrogatories 22 and 24.

4         But the fact that we negotiated a compromise

5  on four discovery requests shouldn't be used to be held

6  against us on all this other stuff that we think is just

7  patently relevant.  And we think it's obvious that it's

8  relevant and we think Judge Trauger reinforced that and

9  that the defendants just need to be ordered to do

10 something here.

11        THE COURT:  All right.  Thank you.

12        MR. ZEBRAK:  Thank you.

13        THE COURT:  Thank you, Mr. Zebrak.  All

14 right.  The Court's going to take this under

15 advisement...

16        All right.  I'm going to take this under

17 advertisement and either issue one order, it may be a

18 series of orders.  For instance, if I give you some

19 guidance about what I would find discoverable, I may, as

20 I said earlier, direct you-all to submit proposed revised

21 discovery requests and I'll pick from one of the two,

22 which is one way that I've resolved some discovery

23 requests -- discovery disputes before.

24        I do want to see the original discovery

25 responses.  Are those responses -- do the responses first

1    set out the request and then have the response so it's

2    all in one document?

3                    MR. ZEBRAK:  Yes, Your Honor.  They do.

4                    THE COURT:  All right.  And I don't need to

5    see all the attachments.  I just need to see the

6    one document that has the request and then the

7    defendant's response.  But I don't need to see any

8    produced documents, for instance.

9                    MR. ZEBRAK:  Right.

10                    THE COURT:  So if you have a hard copy of

11   that, you can give it to Ms. Fishman.  I still want you

12   to file it because I may refer to it, but if you have an

13   extra copy, then it saves Ms. Fishman having to print it

14   out and --

15                    MR. ZEBRAK:  Sure, I can -- yes, Your Honor.

16                    THE COURT:  All right.  If you can give that

17   to Ms. Fishman before we leave today.  And then go ahead

18   and file it subsequent to today's proceeding, just do a

19   notice of filing as instructed today to file the original

20   discovery requests and responses all in one document, if

21   it's all in one document.  If it's in two documents, file

22   it in two documents.  But you understand what I'm asking,

23   Mr. Zebrak?

24                    MR. ZEBRAK:  Yes, Your Honor.  And, of

25   course, that's fine.  We'll do that as Mr. Shapiro

1    indicated we would.  My only question is that, of course,

2    for each of these there's then further narrowing that

3    occurs back and forth by email and various writings,

4    which I assume the Court doesn't want all that.  We tried

5    to create an abridged version of that in the exhibit that

6    we prepared, which is very small.

7                    THE COURT:  Maybe what I need you to do,

8    then, is to tell me which ones you've --

9                    MR. ZEBRAK:  Yeah.

10                   THE COURT:  -- agreed to, at least.

11                   MR. ZEBRAK:  Well, it's not -- I mean, if we

12   agreed -- it's more by way of the fact that, you know, of

13   course, as the plaintiff, we don't know --

14                   THE COURT:  Right.

15                   MR. ZEBRAK:  -- the proper nomenclature or

16   the volume of what they have, so it's a request, they

17   have their form responses, we then negotiate.  Sometimes

18   we'll then say here's what we're really looking for.  I

19   think the Court may want the benefit of that.  We tried

20   to create an abridged version of that in the chart that

21   we attached with the joint statement.

22                   THE COURT:  Well, and I'm not going to --

23   just to be clear to everyone, I'm not going to do -- I

24   don't know if it was you who described it or Mr. Shapiro,

25   but I'm not going to go through every discovery response

1    to compare to these and see if there's something that
2    these might fall under.  It was more a high flyover.
3                    MR. ZEBRAK:  Okay.
4                    THE COURT:  So why don't you go ahead and
5    give that to Ms. Fishman and file it.  And if there's
6    something else that we think we need to see to be more
7    informed, to be fully informed, then I'll do an order
8    directing an additional filing.  That may be -- at least
9    be helpful or it may not be helpful at all.
10                   MR. ZEBRAK:  Understood.  Sure.
11                   THE COURT:  Provide that to Ms. Fishman and
12    then file that as a notice of filing subsequent to -- as
13    requested at today's proceeding.
14                   MR. ZEBRAK:  We'll do that, Your Honor.  And
15    what we'll also do is -- obviously the defendant and
16    plaintiffs still have different views about where this
17    all should land, but we'll, of course, continue to
18    discuss.  And if there's a way we can resolve something,
19    go ahead and submit some proposed agreement, we'll do
20    that.
21                   THE COURT:  Sure.  You-all know, at least
22    have a general idea of where I'm likely to wind up.  So
23    you should continue to have discussions about whether
24    there's any possible resolution of -- and, you know, if
25    it helps to completely -- maybe not -- maybe rewrite's

1    not the correct word, but if it helps to completely

2    wordsmith an existing request to conform to the course of

3    conversations so that everyone's on the same page about

4    what the most current --

5                    MR. ZEBRAK:  Yes.

6                    THE COURT:  -- issue is, the most current

7    request is, then you should go ahead and do that because

8    sometimes it's just -- it just takes that.  It just takes

9    seeing something --

10                   MR. ZEBRAK:  Got it.

11                   THE COURT:  -- for the parties to be able to

12   agree that, okay, that -- now we've gotten to the point

13   where that does finally resolve all the issues.

14                   So I would encourage you to continue to do

15   that.  We will get to this discovery request as soon as

16   possible, but I cannot commit to you a particular time.

17   I understand that discovery's ongoing, that you're coming

18   to the end of the discovery period, that this dispute's

19   been pending for a while, but it's new to me and it's

20   being worked into all of the other matters that I have

21   pending as well and some of which have been pending as

22   long or longer than this.  So we'll get it attended to

23   just as quickly as possible --

24                   MR. ZEBRAK:  Sure.

25                   THE COURT:  -- but without any promises

1    about when that might be.

2              MR. ZEBRAK:  Fully understood, Your Honor.

3    And thank you again.

4              THE COURT:  All right.  Thank you,

5    Mr. Zebrak.  Thank you, Mr. Shapiro and all co-counsel.

6    I appreciate it.  Your preparation, especially the

7    exhibits for today, is very helpful.  And, again, we'll

8    take this matter under advisement and get one or more

9    orders out just as soon as reasonably possible.  We'll be

10   in recess.

11              **\*\*\*END OF ELECTRONIC RECORDING\*\*\***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    REPORTER'S CERTIFICATE
 3
 4         I, Roxann Harkins, Official Court Reporter for
 5    the United States District Court for the Middle District
 6    of Tennessee, in Nashville, do hereby certify:
 7              That I transcribed from electronic recording
 8    the proceedings held on January 6, 2025, in the matter of
 9    CONCORD MUSIC GROUP, INC v. X CORP, Case No.
10    3:23-cv-0606;
11         that said proceedings in connection with the
12    hearing were reduced to typewritten form by me; and that
13    the foregoing transcript is a true and accurate
14    transcript of said proceedings.
15
16         This is the 15th day of January, 2025.
17
18                   s/ Roxann Harkins____
                     ROXANN HARKINS, RPR, CRR
19                   Official Court Reporter
20
21
22
23
24
25
```